[No. 31296. Department One. June 26, 1950.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN WILLIAM LEACH, JR., *Appellant.*[1]

[1]Reported in 219 P. (2d) 972.

*Ray R. Greenwood* and *Frank A. Shiers,* for appellant.

*James Munro* and *Roy A. Holland,* for respondent.

SCHWELLENBACH, J.—Appellant was charged with the crime of carnally knowing his seven-year-old daughter.. Upon the trial the court withdrew from the consideration of the jury the charge of carnal knowledge and submitted to them the question of appellant's guilt or innocence of the crime of attempted carnal knowledge. The jury found appellant guilty of the latter charge and he appeals from the judgment and sentence resulting.

The seven-year-old girl testified that her mother was dead; that she lived in the housing project at Bremerton with her father and eleven-year-old brother, that sometimes she slept with her father. With regard to the particular transaction, she testified:

"Q. Well, along about the first part or the middle of March, did your father sleep with you on some of these occasions? A. Yes, I think so. . . .

"Q. Genie, will you tell the jury just what your father did? Could you do that? A. Well, he'd lay on me and bother me and he'd just—oh, he'd just bother me—and I went to Joey and he went over and got a housekeeper and she came over and I went to her house and stayed. Q. And when he bothered you—would that be after he came to bed at night? A. Yes. Q. And could you tell the jury a little more in detail just how he bothered you? A. Well, he'd bother my parts. Q. And how would he bother your private parts? A. He would lay on them. Q. He would lay on you? A. Yes. Q. And did that hurt you? A. Yes, it did. Q. And on this one occasion, would he have any clothes on when he'd do that? A. Just what he slept in. Q. What he slept in. What did he sleep in, do you recall? A. His underwear. Q. And

would he press his body against yours? A. Yes. Q. And on this one occasion, did he hurt you? A. On one night, he did, —on one night. Q. One night he did. And that is the night you went and got Joey? A. Yes. Q. Were you crying, then? A. Yes. Q. Because he had hurt you? A. Yes. Q. And were you sore and was it hard for you to walk?

"MR. GREENWOOD: Now, just a moment. Wait a minute,—

"THE COURT: No,—objection sustained.

"Q. Would you tell the jury how you felt after he laid on you? A. Well, I was sick and I threw up and that is the way I went to school, and I threw up, then. Q. Did he say anything about who was to be the momma in the house? A. Yes. Q. What did he say?

"MR. GREENWOOD: I think Your Honor, that is leading.

"THE COURT: Overruled. She may answer.

"A. He said I should be the mother. Q. That you'd have to be the mother. Did he press any particular part of him against you? A. Yes. Q. What was it—his private parts?

"MR. GREENWOOD: Just a minute! Counsel, please! Now, he has told her what to say.

"THE COURT: Yes. Don't do that.

"MR. GREENWOOD: You ought to know better.

"THE COURT: Don't lead.

"MR. GREENWOOD: This is serious.

"THE COURT: This is a very, very serious thing. What part?

"THE WITNESS: His private parts.

"MR. GREENWOOD: Well, she was told.

"MR. MUNRO: I believe you may question the witness.

"CROSS EXAMINATION: BY MR. GREENWOOD:

"Q. Now, Eugenia, you remember I talked to you one day last week, didn't I? A. Yes. Q. And I think you and I sat together and talked, just like we are now. And Mrs. Govro was there—you remember that? A. Yes. Q. And I didn't object to her hearing what I had to say, did I? A. No. Q. Now, Eugenia, I think you told me that your pappa was always good to you, excepting when he was drunk, isn't that right? You loved him a lot? A. Yes. Q. And you were scared of him when he drank? A. Yes. Q. And when he'd come home drunk, he'd usually go to bed, wouldn't he— isn't that right? A. Yes. Q. Now, these times when you and he were in bed together—this particular time you told me—did you not, or I will ask you: Didn't you say that you had your panties on—pajamas? That he never pulled your pajamas down, did he? A. No. Q. And that he never took

his clothes off. And all you knew was that he'd sometimes roll on you and lay on you? A. Yes. Q. That he didn't push? A. No. Q. He didn't shove you? A. No. Q. You were afraid of your daddy when he was drunk, weren't you? A. Yes. Q. Now, the night when Velma Dunn went over there, and you went over with her,—do you remember that night? A. Yes. Q. You told Mrs. Dunn that he hadn't done anything wrong, hadn't you? And you sometimes get nervous, don't you? A. Yes, I do. Q. And when you do, you are sick at the stomach? A. I get sick at the stomach. Q. You have been that way, before? A. Yes. Q. And the day after you went to Velma's place, you were sick at the stomach? You had to come home from school? A. Yes. Q. When you talked to me, I didn't tell you what to say or not to say, did I? A. No. Q. Who told you, first, to say that he put his private parts against you? When did you hear that—hear it today? A. I can't remember. Q. Did Mr. Munro suggest that—to use those words? A. Yes, he did use them today. Q. You didn't tell it to him? He had told it to you? A. Well, I knew it before that.

"THE COURT: What?

"THE WITNESS: I knew that before.

"Q. You had heard that before? A. Yes. Q. Where? A. I don't know. Q. Now, you didn't tell Mrs. Dunn that, did you? You didn't tell that to Mrs. Dunn, did you? A. No. Q. You didn't tell it to Mrs. Bennett, did you? A. No. Q. You didn't tell it to me, did you? A. Yes. Q. That he put his private parts against you? A. Yes. Q. Didn't you just say he laid on you? A. Yes, he did. Q. All right. But your clothes were always on and his clothes were always on, is that right? A. Yes. MR. GREENWOOD: That is all.

"REDIRECT EXAMINATION: BY MR. MUNRO:

"You never have seen me before today, have you? A. No. Q. You told Mrs. Govro that in March, didn't you? A. Yes. Q. And you told her then that he put his private parts against yours, didn't you? A. Yes. Q. And all I asked you to tell is the truth, as you told it to Mrs. Govro? A. Yes.

"MR. MUNRO: That is all.

"MR. GREENWOOD: That is all."

At the close of the testimony, counsel for appellant made a motion to dismiss for lack of evidence, which motion was denied.

The following statutes are necessary for our consideration:

Rem. Supp. 1943, § 2436 [P.P.C. § 118-183]. "Every male person who shall carnally know and abuse any female child under the age of eighteen years, not his wife, and every female person who shall have sexual intercourse with any male child under the age of eighteen years, not her husband, shall be punished as follows:

"(1) When such an act is committed upon a child under the age of ten (10) years, by imprisonment in the state penitentiary for life; . . ."

Rem. Rev. Stat., § 2437 [P.P.C. § 118-185]. "Any sexual penetration, however slight, is sufficient to complete sexual intercourse or carnal knowledge."

Rem. Rev. Stat., § 2264 [P.P.C. § 128-11]. "An act done with intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime; . . ."

Rem. Rev. Stat., (Sup.), § 2442 (2) [P.P.C. § 118-195]. "Every person who shall take any indecent liberties with or on the person of any female under the age of fifteen years, or make any indecent, or obscene exposure of his person, or of the person of another, whether with or without his or her consent, shall be guilty of a felony, and shall be punished by imprisonment in the state penitentiary for not more than twenty years, or by imprisonment in the county jail for not more than one year."

 The acts testified to did not constitute the crime of carnal knowledge. Our sole inquiry, therefore, is whether or not the facts established the crime of attempted carnal knowledge. In *State v. Cass*, 146 Wash. 585, 264 Pac. 7, we stated that an attempt to commit a crime consisted of two elements: first, a criminal intent; and second, some form of overt act. A more comprehensive definition of the elements of an attempt is set forth in 14 Am. Jur. 813, Criminal Law, § 65:

"The question as to what constitutes an attempt to commit a particular crime is often intricate and difficult to determine, and no general rule has been or can be laid down which may be applied as a test in all cases. Each case must be determined on its own facts, in the light of certain principles which appear to be well settled. An attempt to commit a crime is any overt act done with the intent to commit the crime and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime."

In 22 C. J. S. 139, Criminal Law, § 75, it is stated:

"Generally speaking, whether there has been an attempt to commit a crime depends on the state of mind and the conduct of accused in the attempted consummation of his design. More specifically, an attempt to commit a crime consists of the following elements: (1) The intent to commit the crime. (2) Performance of some act toward the commission of the crime. (3) The failure to consummate its commission, or, as sometimes stated, the intent to commit a crime, and a direct ineffectual act done toward its commission. No degree of intent will of itself suffice to constitute an indictable attempt to commit a crime, no matter how evil or malignant it may be; nor can an act alone constitute an attempt, no matter how well adapted it may be to effect a criminal result, unless coupled with an intent, . . . "

See, also, 1 Wharton's Criminal Law (12th ed.) 279, Attempts, § 212; and 1 Bishop on Criminal Law (9th ed.) 518, Attempts, § 728.

While it is essential that the overt act must be coupled with the intent, the intent must be to carry out what constitutes a completed substantive crime. The accused must have intended to accomplish the particular crime which is the basis of the charge against him. He cannot be convicted of an attempt to commit a crime which he did not intend to commit. Although the commission of the overt act does not establish the particular intent to commit a specific crime, yet intent, being a state of mind, may be inferred by the jury from all the facts and circumstances, as is the case in consummated crimes. 1 Wharton's Criminal Law (12th ed.) 318, Attempts, § 234; *State v. Tomblin*, 124 W. Va. 264, 20 S. E. (2d) 122.

While the rule that every sane man is presumed to intend the usual and probable consequences of his acts applies to attempts, the existence of the intent may not be inferred from the overt act alone. Both elements must coincide. They must be coupled with each other. They must be considered together. As is stated in 1 Bishop on Criminal Law (9th ed.) 525, Attempts, § 735 (2): "A further view is that in reason we cannot first draw an evil intent from an act, and then enhance the evil of the act by adding this in-

tent back again to it." See, also, §§ 729 and 731 therein; and 22 C. J. S. 139, Criminal Law, § 75.

■ Turning now to a consideration of the other element in an attempt, the overt act, we find that term defined in 14 Am. Jur. 816, Criminal Law, § 68, as follows:

"In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission thereof. Therefore, the act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparations are made."

The courts have recognized the principles set forth as a guide to assist them in determining whether or not there has been an attempt to commit a crime. But the cases and authorities are agreed that it is the duty of the courts to consider the facts in each individual case, and determine from them, by a practical and common sense application of these principles, whether or not, in fact, there was an attempt to commit the crime charged.

■ When the case at bar went to the jury, the appellant was charged with the crime of attempted carnal knowledge. Was there any substantial evidence presented from which the jury could logically infer that appellant intended to commit the completed crime of carnal knowledge? From his actions in lying on top of his daughter, though both were partially clothed and neither of their private parts were exposed, the jury could properly find the commission of an overt act constituting the first or some subsequent step in a direct movement toward the commission of the offense of carnal knowledge. But did the jury have the right to infer on the basis of the evidence that at the time appellant committed the overt act he had the evil design to sexually pene-

trate his daughter and thus carnally know her? We must limit our inquiry to the facts as they actually existed.

The only evidence touching on this point is the testimony of the complaining witness. The substance of her testimony on direct and cross-examination was that on the night in question the appellant had been drinking; that he came home and joined her in bed, a circumstance not unusual in itself, since it seemed to have been the custom that they occupy the same bed; that he had on his underwear and she her pajamas; that appellant made some remark to the effect that she would have to be the mother; and that he rolled or got on top of her. We cannot say that this testimony provides any substantial evidence of a specific intent on the part of the appellant to consummate the completed offense of carnal knowledge by having sexual intercourse with her.

■ The conduct of appellant was reprehensible in the extreme. He contends that it would, at the most, constitute the crime of taking indecent liberties. Such a crime was not charged. As is pointed out in *State v. Kosanke,* 23 Wn. (2d) 211, 160 P. (2d) 541, indecent liberties and carnal knowledge are two separate and distinct offenses. By so providing in its 1937 amendment to the criminal code, the legislature recognized that every laying on of hands upon a female under the age of fifteen years does not necessarily imply an intent to have sexual intercourse. And where, as here, there is no substantial evidence from which the jury could reasonably infer that intent, its verdict cannot stand. The trial court erred, therefore, in failing to grant appellant's motion for dismissal at the close of the state's case.

The judgment and sentence is reversed.

SIMPSON, C. J., BEALS, GRADY, and DONWORTH, JJ., concur.