[No. 34983.   Department One.   January 21, 1960.]

THE STATE OF WASHINGTON, *Appellant,* v. RAYMOND J. CHRISTENSEN, *Respondent.*[1]

*Tom A. Durham* and *Richard J. Waters,* for appellant.

*Russell Millhouse,* for respondent.

HUNTER, J.—Raymond J. Christensen was found guilty by a jury of the crime of attempted kidnaping. He thereupon interposed a motion in arrest of judgment and for dismissal of the action. The motion was granted by the trial court for the reason that the state failed to prove an essential element of the crime charged, the commission of an overt act. The state appeals.

A single issue is raised by appellant's assignments of error: whether the respondent committed an overt act. The rule is clear in this state that for a defendant to be con-

[1]Reported in 348 P. (2d) 408.

victed of an attempt to commit a crime, two essential elements must be established, (1) criminal intent, and (2) some form of overt act. *State v. Cass*, 146 Wash. 585, 264 Pac. 7 (1928); *State v. Awde*, 154 Wash. 463, 282 Pac. 908 (1929); *State v. Leach*, 36 Wn. (2d) 641, 219 P. (2d) 972 (1950).

In *State v. Leach*, we said:

"Turning now to a consideration of the other element in an attempt, the overt act, we find that term defined in 14 Am. Jur. 816, Criminal Law, § 68, as follows:

" 'In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission thereof. Therefore, the act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparations are made.'

"The courts have recognized the principles set forth as a guide to assist them in determining whether or not there has been an attempt to commit a crime. But the cases and authorities are agreed that it is the duty of the courts to consider the facts in each individual case, and determine from them, by a practical and common sense application of these principles, whether or not, in fact, there was an attempt to commit the crime charged."

With the above rule of the *Leach* case in mind we will consider the facts of the instant case.

In 1956 the respondent was building a home near Bellingham and employed one Elmer Lindquist to assist with the construction. The respondent, becoming displeased with Lindquist's services, dismissed him and refused to pay for his work. Lindquist filed a labor and materialmen's lien and in a subsequent foreclosure action obtained a judgment against the respondent. The respondent became embittered against Lindquist, and on October 11, 1957 he sought to

enlist the aid of one Gordon Hatfield "to settle a score." Hatfield was to bring Lindquist to Governor's Point outside of Bellingham, where, Christensen said, he intended to punch Lindquist in the nose. On the twelfth or thirteenth of October, Hatfield and another teenage boy, Terry Stokes, met with the respondent, who again outlined his plan. When Stokes appeared reluctant, because he feared that Lindquist might later recognize them, respondent informed the two boys that "Mr. Lindquist isn't coming back."

When the two learned that the respondent intended to do away with Lindquist, they decided to report the conversation to the Bellingham police. The police told them to meet with the respondent again. The following day the two boys, as directed, went to the respondent's place of business. The respondent told them to borrow a car, or steal some license plates from a used car lot, and to pick up Lindquist at his home that evening and bring him to Governor's Point. The respondent was to compensate them for their services. No force was to be used upon Lindquist and he was to be induced to voluntarily accompany the boys to the prearranged place so the respondent, individually, could take over from there. The boys were to meet the respondent at six-thirty that night. In the meantime they informed the police. Lindquist was advised not to be home. Officers were stationed to keep the Lindquist residence under surveilance that evening. At the appointed time, the respondent drove the boys past the Lindquist home. He pointed it out and then drove them back to their automobile. He continued on alone to a place about one and one-half blocks from the house where he parked. The boys drove up to the house, one went to the door and knocked, but there was no response since, as prearranged, the house was empty. They rejoined the respondent and drove by the Baptist Church of which Lindquist was a member, but not finding his parked car they proceeded back to the vicinity of the Lindquist home. They waited for a short period and then decided to do nothing further until the following evening. At that time the respondent, according to the boys, showed

them a pistol and stated "this is the baby that does it." The following day the respondent was asked to go to the police station, and during the course of his interrogation a loaded automatic pistol was found in respondent's car.

The above evidence is not substantially in dispute except that respondent denies making any statement concerning his intention to do bodily harm to Lindquist, other than to punch him in the nose. As observed by the trial court, the jury's recommendation of leniency indicated the jury believed his testimony in this regard.

From the foregoing facts the significant conclusion is that the respondent failed to locate the intended victim to set in motion the chain of events for the consummation of the offense intended to be perpetrated. A case on similar facts involving an attempted robbery was considered by the New York court of appeals. *People v. Rizzo*, 246 N. Y. 334, 158 N. E. 888, 55 A. L. R. 711 (1927). There the defendants were searching for a man they intended to rob, but failed in the search to locate their intended victim, and the court therefore held no overt act had been committed.

In the instant case the record does not show the commission of an overt act, the second essential element of the crime with which the respondent was charged; the respondent's conduct progressed no further than mere preparation.

The judgment of the trial court in granting the respondent's motion for an arrest of judgment and a dismissal of the action is affirmed.

WEAVER, C. J., MALLERY, DONWORTH, and ROSELLINI, JJ., concur.