[No. 38280.   Department Two.   August 4, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. THELMA RANDOLPH LEWIS *et al., Appellants.*\*

\*Reported in 417 P.2d 618.

*Opendack & Alfieri* and *James A. Alfieri,* for appellants.

*Charles O. Carroll* and *David W. Soukup,* for respondent.

BARNETT, J.†—Appellants Agnes Woodley and Thelma Lewis appeal from a judgment entered upon a jury verdict by which they were found guilty of attempted grand larceny.

The facts are virtually undisputed. Mrs. Clara Werth, 83, was living in Seattle with her retired husband. On December 11, 1964, while shopping at a neighborhood store, Mrs. Werth encountered appellant Agnes Woodley, to her a stranger. In the course of conversation, Woodley told Mrs. Werth of a lady friend who had found "a big money envelope with lots of money in it," and that she herself was carrying upon her person the cash sum of $10,000 which, she stated, was the insurance proceeds resulting from her husband's death. Asked about a "reliable bank," Mrs. Werth revealed to Woodley that she and her husband kept their "little savings" (some $8,000) in a bank which was very reliable.

At this point in the conversation, appellant Lewis, who had reportedly found the envelope containing the large sum of money, entered upon the scene. Lewis at first appeared piqued at her friend's disclosure of her providential acquisition, but her anger seemed to abate with Woodley's assurance that Mrs. Werth was "all right." Lewis then confided that the envelope which she had found contained the cash sum of $9,800 together with lottery stubs and

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

photographs of disrespectable women. When asked by Mrs. Werth as to her intentions regarding the money, Lewis replied that, on the advice of her "boss," she was going to keep it—and divide it—since it apparently had come from disrespectable persons. Mrs. Werth was persuaded to discuss the matter further while driving around in the "boss' car," which Mrs. Lewis said she had borrowed. The "boss," said appellant Lewis, had cautioned her that the money should be divided only on the condition that each recipient show some money of her own as an assurance that the found money would not immediately be spent. The car was parked and appellant Woodley gave to Lewis a wallet which she had represented as containing her insurance proceeds of $10,000, and which Lewis took to show her "boss" in his office "on 84th Street." Upon Lewis's return, Woodley was given what was purported to be a roll of bills worth some $3,000—or a third of the "found" money. Mrs. Werth testified that on top of the roll was a $10 bill, but that the rest "did not look to me to be too good." At the same time Woodley's wallet, supposedly containing the insurance money, was returned to her. Mrs. Werth, when asked by one of the appellants whether she was possessed of her bank book at that time, replied that she was not, and that it was necessary for her to return to her home, where her husband, probably worried, was waiting. Lewis told her that she would call the following Monday, and Mrs. Werth gave to the appellants her telephone number.

Her suspicions aroused, Mrs. Werth alertly contacted the Seattle Police Department. Appellant Lewis telephoned her on Monday morning and arranged to "finish the business." The police were present at the Werth home when this contact was made. A rendezvous was agreed upon by Lewis and Mrs. Werth, and the scene was staked out by the police. It appears that the appellants, in approaching the agreed meeting place, became cognizant of the presence of the police and fled. A subsequent chase resulted in their apprehension.

Lewis and Woodley were tried and convicted of attempted grand larceny by trick, device or bunco. Their appeal from

these convictions is prosecuted upon their belief that the state has failed to produce enough evidence from which a jury could find that they *intended* to commit the crime of grand larceny, or that they committed a sufficient *overt act* in endeavoring to consummate the crime.

RCW 9.54.010 provides, in part:

Every person who, with intent to deprive or defraud the owner thereof—

. . . .

(2) Shall obtain from the owner or another the possession of or title to any property, real or personal . . . by color or aid of any fraudulent or false representation . . . or by any trick, device, [or] bunco game . . . .

. . . .

Steals such property and shall be guilty of larceny.

If the value of the stolen property is of or more than $75, the consummated crime is designated as grand larceny. RCW 9.54.090(6). RCW 9.01.070 defines the crime of attempt as: "An act done with intent to commit a crime, and tending but failing to accomplish it . . . ."

■ The state, in a prosecution for an attempted crime, must prove that the defendant actually intended to commit the target crime, and that he performed an *overt act* directed toward its commission. There must be a unity of intent and overt act. Both elements must coincide. *State v. Christensen,* 55 Wn.2d 490, 348 P.2d 408 (1960); *State v. Leach,* 36 Wn.2d 641, 219 P.2d 972 (1950); 1 Wharton, Criminal Law and Procedure § 71, p. 152 (1957); 21 Am. Jur. 2d *Criminal Law* § 110 (1965).

Appellants challenge the evidence presented by the state as insufficient to prove either of the essential elements. We must hold against them on both propositions.

■ Intent, being a state of mind, can be inferred by the jury from all of the facts and circumstances surrounding the act. *State v. Willis,* 67 Wn.2d 681, 409 P.2d 669 (1966). This rule is as applicable in cases of attempted crimes as it is in cases where the crime has been consummated. *State v. Leach, supra.* The state's evidence, were the jury to believe

it, and the reasonable inferences to be drawn therefrom, establish the facts that (1) there is practiced a well-known bunco scheme known as the "pigeon drop" or the "lost wallet"; (2) appellants followed the pattern of this scheme nearly to the letter; (3) appellants made several false statements to Mrs. Werth; (4) appellants, when arrested, were in possession of several items of property commonly used by confidence game operators such as wigs and stage money; included among these items was a paperback book entitled "The Big Con," within which various confidence games were described; and (5) appellants attempted to flee from the arresting law enforcement officers.

■ Appellants strongly contend that criminal intent cannot be imputed to them from their overt acts alone. Where a defendant's overt act is patently equivocal, this rule may well be applicable. Thus, we held in *State v. Leach, supra,* cited by appellants, that the jury could not justifiably find a specific intent on the part of the defendant to have carnal knowledge of his daughter when the evidence showed only that he customarily shared a bed with her, and that, occasionally, while he and she were partially clad, he laid atop her. But the rule above urged has no application where, as here, the specific criminal intent of the accused may be inferred from the conduct "where it is plainly indicated as a matter of logical probability." Perkins, Criminal Law, p. 497 (1957).

The record disclosed abundant evidence from which the jury could justifiably find that appellants, throughout their course of conduct, actually intended to deprive or defraud Mrs. Werth of her property by trick, device or bunco game.

■■ Intent alone, of course, is not punishable. It must coincide with some *overt act* adapted to, approximating and which, in the ordinary and likely course of events, will result in the commission of the target crime, reaching far enough toward its accomplishment to amount to the commencement of the consummation. Mere preparation is not indictable. The conduct of the accused, while it need not be the last act necessary to the consummation of the intended crime, must approach sufficiently near it to stand

as a direct movement toward the commission of the offense after the preparations are made. In determining just where preparation ceases and attempt begins, we can be aided by no rigid formula. Each case hinges upon its own facts and circumstances. *State v. Christensen, supra; State v. Leach, supra;* 21 Am. Jur. 2d *Criminal Law* § 111 (1965).

It is the position of appellants that their conduct was, at most, merely *preparatory* to the perpetration of the target crime. We do not agree. The line between preparation and perpetration is often thin and difficult of ascertainment. However, that line was clearly transgressed here. From the evidence, the jury was justified in believing that the appellants engaged their intended victim in certain conversation by which they discovered the state of her bank account; that they made deliberate misstatement upon misstatement concerning the "found" money, the insurance proceeds, and the existence of a "boss," his car and his office; that they displayed a roll of spurious bills which they advertised as the "found" money; that they telephoned Mrs. Werth at her home 3 days later and arranged to "finish the business"; that appellants traveled to the rendezvous scene to consummate the target crime, and were prevented from doing so only by their last-minute discovery of the presence of the police, and by Mrs. Werth's determination—unknown to them—not to deliver the money. These acts constitute a direct movement toward the consummation of larceny by bunco scheme.

Appellants had done every act in the execution of their contrived scheme except to receive the property of their intended victim. A case in point, though not from our jurisdiction, is *Williams v. State,* 209 Miss. 902, 909, 48 So.2d 598 (1950), where it was said:

> The rule is well recognized that "whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt". [Citations omitted.]
>
> It is obvious that appellant and her companion designed and intended to obtain fraudulently the money of the Jacksons and convert it to their own use. The acts done

in furtherance of that design were not merely slight, but were, in fact, substantial. The appellant and her companion ascertained that the Jacksons had money. They represented that a pocketbook had been found containing $105. The pocketbook and money were exhibited. The Jacksons had money in the bank. The scheme was to get $100 of their money by permitting Tillie to share in the proceeds of the pocketbook. The place for the division was designated. Tillie left the scene ostensibly to get the money. At the designated place, the appellant and her companion appeared to be nervous and sought to escape. The only thing lacking in the consummation of the larceny was the actual delivery of the money.

The proof sustained the charge.

We can reach no different conclusion on the evidence before us. Both intent and overt acts are substantiated by the record.

Judgment affirmed.

ROSELLINI, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.

---

September 30, 1966. Petition for rehearing denied.