[No. 39650.    Department Two.    August 22, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. SIDNEY R. WRIGHT, *Appellant*.*

*Etter & Etter*, by *R. Max Etter*, for appellant.

*George A. Kain* and *Donald C. Brockett*, for respondent.

WIEHL, J.†—Defendant, Sidney R. Wright, was convicted by a jury of the crimes of abortion and the unlawful prac-

*Reported in 444 P.2d 676.

†Judge Wiehl is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

tice of medicine. Both crimes were committed on December 9, 1966. A third count of the information charging defendant with attempted abortion upon a police agent on December 21, 1966, was dismissed for want of an overt act.

Investigation commenced when the police were notified by hospital authorities that Sandra Murray had been admitted as an emergency case suffering from the effects of an apparent abortion upon her. She was approximately 2½-months pregnant. The police asked Murray for a statement, and on advice from her attorney, she decided to admit to the prosecuting attorney that she had engaged defendant to induce an abortion on her. At trial, both Murray and her mother, who had paid for the abortion, testified that defendant had used abortifacients on her which were successful according to testimony by examining physicians.

The police procured the services of Carolyn Singleton, who agreed to act as a police agent. She telephoned the defendant on two occasions and arranged an appointment in his home. The calls were monitored and recorded by the police. The agent kept the appointment and arrived armed with a radio transmitting device concealed in her clothing. Defendant escorted her to his basement which was outfitted with medical equipment, explained the abortion procedure, asked a fee of $300 and requested the agent to return that evening for the abortion. Prior to her return, the agent made a third telephone call to the defendant which was also monitored. Defendant asked the agent to come to his home immediately. The agent, who had been in contact with the police in the interim, returned, again equipped with the transmitter. Defendant again led her to his basement where the $300 fee was paid in marked currency.

Upon defendant's insistence that he must check her heart before proceeding with the abortion, the agent went to the bathroom, removed the transmitter and requested the monitoring police to wait 5 minutes before intruding. The police who were monitoring and recording the conversation had by this time pulled their unmarked vehicle into de-

fendant's driveway as an aid to their electronic reception of the conversation.

Having satisfied himself that the agent's heart was sound, defendant approached his instrument tray and removed the lid, when he was interrupted by a noise which he felt compelled to check. At this point, the police knocked, informed defendant of their identity and his arrest.

Approximately 60 pieces of evidence were seized and ultimately admitted into evidence. Most of the exhibits consisted of medical paraphernalia and equipment which were seized in defendant's basement "clinic." The marked money and the tape recording containing all the monitored conversations were also admitted.

The sole issue presented to this court is whether the seized exhibits, the tape recording and the testimony of the monitored conversations should have been suppressed as the products of an illegal search and seizure violative of the fourth amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment by *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 Sup. Ct. 1684 (1961).

Defendant urges that *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 Sup. Ct. 507 (1967), is dispositive of the question presented. Having examined the opinion closely, we are constrained to disagree.

In *Katz*, government agents attached an electronic listening and recording device to the outside of a public telephone booth to procure evidence of defendant's suspected illegal interstate transmittal of wagering information. The court of appeals held there was no Fourth Amendment violation because there was no physical entrance into an area occupied by the defendant. The Supreme Court, reversed, holding the recordings of the defendant's part in the conversations were inadmissible and said at 353 that the "reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." Neither party to the conversations had consented to the surveillance and the court found that the Fourth

Amendment protected defendant's right to exclude the "uninvited ear" even though the calls were placed from a public telephone booth.

[1] In the instant case, the defendant invited the informer into his home, fully cognizant of the risk that she might be a police agent, who could testify against him in a subsequent prosecution.[1] In the present case, the police agent concealed on her person the transmitter which she carried into the confines of defendant's establishment enabling the conversation between her and the defendant to be monitored and recorded.

Mr. Justice White in his concurring opinion in *Katz, supra,* points out in a footnote at 363, that *Katz* does not affect previous cases which have allowed admission of evidence obtained:

> (2) by a recording device hidden on the person of such an informant, *Lopez v. United States,* 373 U.S. 427 (1963); *Osborn v. United States,* 385 U.S. 323 (1966); and (3) by a policeman listening to the secret micro-wave transmissions of an agent conversing with the defendant in another location, *On Lee v. United States,* 343 U.S. 747 (1952). When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. The Fourth Amendment does not protect against unreliable (or law-abiding) associates. *Hoffa v. United States, supra* [385 U.S. 293, 17 L. Ed. 2d 374, 87 Sup. Ct. 408 (1966)]. It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another.

*Dancy v. United States,* 390 F.2d 370 (5th Cir. 1968), decided subsequent to the *Katz* decision, and *Long v. United States,* 387 F.2d 377 (5th Cir. 1967), published subsequent to the *Katz* decision, ruled admissible, evidence procurred by a government agent or informer who carried a con-

---

[1]*Hoffa v. United States,* 385 U.S. 293, 17 L. Ed. 2d 374, 87 Sup. Ct. 408 (1966), held that the Fourth Amendment does not protect a defendant from the risk of misplaced confidences.

cealed transmitter while engaging defendant in incriminatory conversations. The basis of the holdings was the continued viability of *On Lee v. United States,* 343 U.S. 747, 96 L. Ed. 1270, 72 Sup. Ct. 967, (1952); *Lopez v. United States,* 373 U.S. 427, 10 L. Ed. 2d 462, 83 Sup. Ct. 1381 (1963); and *Osborn v. United States,* 385 U.S. 323, 17 L. Ed. 2d 394, 87 Sup. Ct. 429 (1966).[2]

We agree with these interpretations of the *Katz* case, *supra,* and find no violation of defendant's rights by virtue of the concealment of the transmitter on the person of the police informer making possible the monitoring and transcription of the conversations.

■ Defendant contends that the trespass into his driveway for the purpose of a clearer reception of the transmitted conversation taints all evidence seized subsequent to the trespass. We cannot agree. Any search and seizure which took place by virtue of the transmittal and recording of the conversation, took place within the defendant's home and is permissible under the rationale of the *On Lee, Lopez,* and *Osborn* cases cited above. There was no invasion of defendant's privacy committed in the driveway. The trespass made possible no probe into secret places or conversations. It was within the confines of his "clinic" that defendant knowingly and willingly surrendered his privacy by exposing both his occupation and the tools of his trade to the agent, thus risking that the person whom he invited

---

[2]Defendant urges that *United States v. White* (7th Cir. 1968), slip opinion, March 18, 1968, *aff'd on rehearing* 405 F.2d 838 (1969), is contra to the *Lopez, Osborn* and *On Lee* cases, *supra,* and is a correct interpretation of the *Katz* decision, *supra,* but in *White,* the police agent monitoring the conversation was not allowed to testify because the informer himself did not testify. In the present case, the agent testified, two of the monitoring police testified, and the tape recording was admitted. Thus, the defendant was not deprived of his right of cross-examination which seems to be the evil sought to be protected against by Chief Justice Warren in his concurring opinion in *Lopez, supra.*

inside would make public what she had heard and seen.[3] The trespass merely allowed corroboration of evidence freely revealed by defendant, and thereby insured the reliability of that evidence. Thus, in the words of Mr. Justice White quoted above:

> It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another.

■ The seizure of the medical paraphernalia and equipment was not violative of the Fourth Amendment since it was made incident to a valid arrest. The police had probable cause to arrest the defendant, independent of any information gained by use of the conversation monitored on

---

[3]Even if we assume that the seizure of the conversation took place in the driveway by means of a trespass, defendant's argument urging suppression of the recording and testimony of the monitoring police must fail because of the "open field" doctrine set out by Mr. Justice Holmes in *Hester v. United States,* 265 U.S. 57, 68 L. Ed. 898, 44 Sup. Ct. 445 (1924), and the cases adhering to that rule. *McDowell v. United States,* 383 F.2d 599 (8th Cir. 1967); *United States v. Benson,* 299 F.2d 45 (6th Cir. 1962); *Giacona v. United States,* 257 F.2d 450 (5th Cir. 1958); *Hodges v. United States,* 243 F.2d 281 (5th Cir. 1957); *Care v. United States,* 231 F.2d 22 (10th Cir. 1956); *Martin v. United States,* 155 F.2d 503 (5th Cir. 1946); *Koth v. United States,* 16 F.2d 59 (9th Cir. 1926); *United States v. Myers,* 219 F. Supp. 908 (E.D. Pa. 1963); *United States v. Rogato,* 39 F.2d 171 (M.D. Pa. 1930); *State v. Gillingham,* 36 Wn.2d 655, 220 P.2d 333 (1950).

Although exactly where the curtilage ends and the open field begins is answered only on a case to case basis, we do not consider defendant's driveway in the present case to fall within the curtilage. Nor do we consider the driveway within the protection accorded the defendant in *Wattenburg v. United States,* 388 F.2d 853, 857 (9th Cir. 1968), wherein the court found an area immediately adjacent to defendant's abode within the curtilage and stated: "We wish to add, however, that it seems to us a more appropriate test in determining if a search and seizure adjacent to a house is constitutionally forbidden is whether it constitutes an intrusion upon what the resident seeks to preserve as private even in an area which, although adjacent to his home, is accessible to the public." The court decided defendant, by placing a stockpile of trees near his abode, sought to protect it from a warrantless meticulous examination by government agents. The agents seized several trees from the stockpile which were found to match stump cuts made on government lands. The evidence so acquired was used in the prosecution of the defendant.

defendant's premises. The police, in the instant case, had been informed of a prior abortion committed by the defendant at the same location, they had been in close contact with their agent immediately prior to her entry into defendant's home and knew the purpose for which defendant had invited the agent into his home. The police had sufficient knowledge of the circumstances to support the belief of a cautious but disinterested man that defendant had committed a felony and was about to commit another. *State v. Bellows,* 72 Wn.2d 264, 432 P.2d 654 (1967); *State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967); *State v. Davis,* 69 Wn.2d 127, 417 P.2d 622 (1966); *State v. Baxter,* 68 Wn.2d 416, 413 P.2d 638 (1966); *State v. Massey,* 68 Wn.2d 88, 411 P.2d 422 (1966); *State v. Biloche,* 66 Wn.2d 325, 402 P.2d 491 (1965); *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965).

Defendant was arrested upon the entry into his basement by the police and the subsequent search of the basement "clinic" was incident to the arrest. This court in *State v. Cook,* 70 Wn.2d 715, 718, 424 P.2d 1006 (1967), quoted *State v. Biloche, supra,* at 327:

> The law is equally clear that a search without a warrant may be made incident to an otherwise lawful arrest without a warrant where the arresting officers had reasonable grounds to believe that a felony had been, was being or was about to be committed by the person arrested. *State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965); *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841 (1923); *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 Sup. Ct. 1623 (1963).

The trial court committed no error in admitting the evidence which defendant sought to suppress.

■ The state cross-appeals, urging the trial court's dismissal of the charge of attempted abortion was error. We find no error. In *State v. Lewis,* 69 Wn.2d 120, 123, 417 P.2d 618 (1966), we said:

> The state, in a prosecution for an attempted crime, must prove that the defendant actually intended to commit the target crime, and that he performed an *overt act* directed toward its commission. There must be a unity of

intent and overt act. Both elements must coincide. *State v. Christensen*, 55 Wn.2d 490, 348 P.2d 408 (1960); *State v. Leach*, 36 Wn.2d 641, 219 P.2d 972 (1950); 1 Wharton, Criminal Law and Procedure § 71, p. 152 (1957); 21 Am. Jur. 2d *Criminal Law* § 110 (1965).

The judgment is in all respects affirmed.

HILL, ROSELLINI, HAMILTON, and NEILL, JJ., concur.