[No. 39977.   Department Two.   November 15, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. ADA GODDARD, *Appellant*.*

*Etter & Etter*, by *R. Max Etter*, for appellant.

*George A. Kain* and *Donald C. Brockett*, for respondent.

GAINES, J.†—Through a friend the appellant, Ada Goddard, learned that a Mrs. L. was interested in having an

*Reported in 447 P.2d 180.

---

†Judge Gaines is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

abortion performed on her 16 year old daughter. About the same time Phyliss Marsh, a detective for the Young Peoples Bureau of the Spokane Police Department, learned of the plan and took the daughter into protective custody. The following day Mrs. Marsh, Detective Bruce Campbell of the police department and a juvenile court probation officer met with Mrs. L., who admitted she was considering an abortion for her daughter. After a discussion with Mrs. L. about the seriousness of such an operation she agreed to cooperate with the authorities and call Mrs. Marsh if she heard from appellant.

That same evening Mrs. L. reported to Mrs. Marsh that she had been called from Coeur d'Alene, Idaho, by someone named "Ada", and Mrs. L. was to call back the next day. The following day Mrs. L. allowed Mrs. Marsh and Detective Campbell to place an electric recording device on her telephone so that her call to appellant could be recorded. Two calls were made to appellant at Coeur d'Alene, during which it was learned that an abortion could be done for $350. Later that day Mrs. L. met appellant at Coeur d'Alene, and she explained her method of performing an abortion, informing Mrs. L. that she was a nurse. Arrangements were made for appellant to come to Mrs. L.'s home in Spokane to perform the operation.

With the consent of Mrs. L., an electric transmitting device was placed in a closet close to the bedroom where the attempted abortion was to take place for the purpose of transmitting sound to a receiver and recorder in a police car outside the L. home. Mrs. L. was given $350 in currency to pay the agreed price for the operation. An employee of the Spokane Police Department, Miss Janet Mitchell, was to pose as Mrs. L.'s daughter and pretend to go through with the scheme. She was instructed that if she thought she was going to be examined or touched with an object she would say, "I am cold," and the officers would come in.

At the appointed time appellant, carrying a satchel, arrived at the L. home where Mrs. L. introduced Miss Mitchell as her daughter and asked appellant to explain to her daughter what was going to take place. Appellant told Miss

Mitchell that she would give her a pelvic examination and then give her a shot of solution which was to be held in place by a piece of cotton with a long string. This procedure would cause cramping that evening and the next day and bring about a miscarriage. It should be noted that Miss Mitchell was not pregnant and was in good health.

After appellant was paid the agreed amount of money she proceeded to warm two jars of solution to body temperature and place them on a chair at the foot of the bed, along with vasoline, cotton with a long string on it, and instruments wrapped up in a towel, including a rubber catheter, speculum, forceps and a syringe. She unscrewed the lid from one of the jars of solution. After placing towels and a piece of plastic over the mattress, appellant had Miss Mitchell remove her garments from the waist down and told her to lie back on the bed. Appellant poked around at her stomach and wiped off the pubic area with a washcloth. Asked what followed, Miss Mitchell testified:

A. Well, she came toward me with—down toward my pubic area, and I raised up and hollered for my mother, and I saw nothing was going on and I relaxed back down on the bed, . . . and again Ada come down toward me, and I felt a metal object on my leg, so I hollered to my mother that I was cold, and she repeated this, and asked if she could get a blanket, and at that time Detectives Marsh and Campbell and you came into the house. I jumped back and put my robe down.

When the officers came they found appellant standing in the doorway of the bedroom with a flashlight in her hand. Miss Mitchell was sitting on the end of the bed.

There was medical testimony that the use of the instruments and solutions seized upon the arrest of the appellant, used in the manner explained to Miss Mitchell would cause a pregnant woman to abort. Further, that such an act would constitute practice of medicine. Appellant was not licensed to practice medicine in the state of Washington.

The appellant claims the state failed to prove the crime of attempted abortion because the evidence showed no more than preparation to commit the crime and failed to show an overt act directed toward its commission.

The applicable statutes are:

RCW 9.01.070 An act done with intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime . . . .

RCW 9.02.010 Every person who, with intent thereby to produce the miscarriage of a woman, unless the same is necessary to preserve her life or that of the child whereof she is pregnant, shall—

(1) Prescribe, supply, or administer to a woman, whether pregnant or not, or advise or cause her to take any medicine, drug or substance; or,

(2) Use, or cause to be used, any instrument or other means;

Shall be guilty of abortion . . . .

█ Since the evidence clearly established the intent to perform an abortion the only question here is whether that intent coincided with an overt act adapted to and approximating, and which in the ordinary and likely course of events, would result in the commission of the target crime, that is, did it reach far enough toward its accomplishment to amount to the commencement of the consummation. It is true that mere preparation to commit a crime is not indictable, and in determining just where preparation ceases and attempt begins, we can be aided by no rigid formula. Each case hinges upon its own facts. An overt act is sometimes described as a direct, ineffectual act done toward commission of a crime. *State v. Leach,* 36 Wn.2d 641, 219 P.2d 972 (1950); *State v. Lewis,* 69 Wn.2d 120, 417 P.2d 618 (1966).

█ While no degree of intent, no matter how evil or malignant, will of itself establish proof of an overt act, where intent is clearly shown slight acts in furtherance of a scheme will establish the necessary element of overtness. In *State v. Lewis, supra,* we said at 125:

A case in point, though not from our jurisdiction, is *Williams v. State,* 209 Miss. 902, 909, 48 So.2d 598 (1950), where it was said:

The rule is well recognized that "whenever the design of a person to commit crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt".

*State v. Wright, ante* p. 355, 444 P.2d 676 (1968), involved a somewhat similar attempt by the Spokane Police Department to apprehend an abortionist. There, after several monitored telephone calls the police agent went to defendant's basement "clinic" where he explained the abortion procedure, asked and was paid a $300 fee and examined the agent's heart to satisfy himself that her heart was sound. The defendant then approached his instrument tray and lifted the lid, at which time the police entered and arrested him. We held on those facts that it was not error for the trial court to dismiss the charge for failure of establishing an overt act directed toward its commission.

However, this case is distinguished from *State v. Wright, supra,* in that there were numerous acts by appellant detailed above from which the jury could find overt acts tending directly toward consummation of the attempted crime. *State v. Ray,* 63 Wn.2d 224, 386 P.2d 423 (1963).

Similar cases of attempted abortion upheld in appellate courts of other jurisdictions are: *People v. Berger,* 131 Cal. App. 2d 127, 280 P.2d 136 (1955); *People v. Root,* 246 Cal. App. 2d 600, 55 Cal. Rptr. 89 (1966) and *Adams v. State,* 81 Nev. 524, 407 P.2d 169 (1965).

Appellant next argues that Mrs. L.'s consent to the taping of the telephone conversations and the conversations obtained over the electric transmission devices was coerced and hence the admission of such evidence violated Fourth Amendment rights. The appellant made no timely objection to this evidence during trial or on argument of her motion for arrest of judgment or a new trial and raises this question for the first time on appeal. This contention is without merit as the record established that Mrs. L.'s cooperation with the authorities was not in fact coerced.

It is true that Mrs. L. wanted her daughter out of detention and she said she would have done anything but she concedes she was never pressured by the police. Mrs. L. permitted use of the electronic equipment in each instance before it was installed. Mere hope of reward does not constitute coercion even though the suggestion for installation of the equipment comes from the police. *Good v. United*

*States,* 378 F.2d 934 (9th Cir. 1967); *United States v. Zarkin,* 250 F. Supp. 728 (D.D.C. 1966); *United States ex. rel. Dixon v. Pate,* 330 F.2d 126 (7th Cir. 1964); *McClure v. United States,* 332 F.2d 19 (9th Cir. 1964).

█ This court has held that tapes of telephone conversations made with the consent of one of the parties are admissible in evidence. *State v. Jennen,* 58 Wn.2d 171, 361 P.2d 739 (1961). We have also upheld the admissibility of evidence procured by a police informer who carried a concealed transmitter while engaging a defendant in an incriminating conversation. *State v. Wright, supra.*

We find no error in the record. The judgment and sentence is affirmed.

FINLEY, C. J., HILL, HAMILTON, and NEILL, JJ., concur.

January 22, 1969. Petition for rehearing denied.