[No. 40257.    Department Two.    December 24, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT W. NICHOLSON, *Appellant*.*

*Richard J. Glein*, for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Patricia G. Harber*, for respondent.

ROSELLINI, J.—The appellant was charged on eight counts, one of assault in the second degree, three of assault in the first degree, two of attempted rape, and two of rape. He was found guilty on all counts.

His first contention on appeal is that he was denied his right to counsel when police officers interrogated him in the

*Reported in 463 P.2d 633.

absence of his attorney. At the hearing on the admissibility of testimony concerning statements which he made to the police while detained in jail, evidence was presented by the appellant and by the prosecution upon which the trial court found that the interrogation took place after the appellant had talked with an attorney and had been advised by him not to make a statement. The trial court further found that the appellant gave the police certain information voluntarily in spite of this advice.

The appellant does not deny that there was evidence to support the trial court's findings but he contends that the police should have called his attorney and asked him to be present at the questioning. He tacitly concedes that no case has held that the police have such a duty after they have advised a person under arrest of his rights and have given him an opportunity to consult with his attorney, where he voluntarily talks to them without requesting that his attorney be present.

He does not claim that the constitution imposes such a duty on the police. However, the appellant contends that a situation where police talk to a person in their charge who is represented by an attorney is analogous to a situation where an attorney in a civil case talks to an opposing party who is represented by counsel.

Such conduct on the part of an attorney is prohibited by canon 9 of the Canons of Professional Ethics. That canon reads:

A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel. It is incumbent upon the lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel, and he should not undertake to advise him as to the law.

According to the appellant's theory, the police are agents of the prosecutor's client, the state, and while they are not under the control of the prosecutor, he should not be permitted to use the fruits of their investigation where they

were obtained in a way in which it would be unethical for the prosecutor himself to have obtained them.

While the appellant does not cite any opinions of the American Bar Association Committee on Professional Ethics to support his contention, we have examined those opinions and find that this theory of the applicability of canon 9 to the obtaining of evidence from an arrested person by the police has never been advanced to that body. However, the committee has been asked to deliver an opinion on the question whether it is ethical for a law officer of a municipality to permit police officers to take statements from plaintiffs, who have filed claims against a city, after their claims have been placed in the hands of an attorney for attention, of which fact the law officer has knowledge. The committee was of the opinion that this course of conduct was unethical. ABA, Comm. on Professional Ethics, Opinions, No. 95 (1967). The committee said:

It is clear, we think, that the relationship existing between the law officer of the municipality and the municipality itself is that of attorney and client.  .  .  .

If, as stated in *Canon 9*, "It is incumbent upon a lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel," *a fortiori*, it is encumbent upon a lawyer not to attempt clandestinely to practice coercion on a party who is represented by counsel. Whatever may be the explanation, it is well known that claims for injuries against municipalities are many times brought by poor, ignorant and even illiterate persons. The fact of having police officers or detectives interview persons of this type is to put them at a serious disadvantage. Who can say that the same result would not obtain if the client were intelligent and educated. Even the intelligent and educated layman knows but little of legal procedure. The presence of policemen or detectives, in such a role, rather connotes, to the average layman, the investigation of a criminal matter. Obviously such practice is reprehensible.

The law officer is, of course, responsible for the acts of those in his department who are under his supervision and control. *Opinion 85. In re* Robinson, 136 N. Y. S. 548 (affirmed 209 N. Y. 354-1912) held that it was a matter of

disbarment for an attorney to adopt a general course of approving the unethical conduct of employees of his client, even though he did not actively participate therein.

It would be unavailing to contend that the police officers or detectives are not under the supervision and control of the law officer, but rather are under the supervision and control of the municipality. "The attorney should not advise or sanction acts by his client which he himself should not do." *Opinion 75. Canon 16* also sets forth that if a client persists in improprieties contrary to the advice of his attorney, the lawyer should terminate the relationship. *Opinion 44.* People *ex rel.* Colorado Bar Association *vs.* White, 89 Colo. 306, 1P. (2d) 577.

Furthermore, the duty of an attorney is not confined solely to his client. He has some obligations respecting the court and his bretheren at the Bar. *Canon 22,* among other things, deals with candor and fairness to other lawyers. Such conduct on the part of the law officer of the municipality is not, we think, dealing with a brother lawyer with candor and fairness.

In the opinion of the committee the question should, therefore, be answered in the negative.

Our understanding of the gist of this opinion is that a public attorney should refrain from intimidation of an opposing party or taking unfair advantage of him, just as a private attorney should. This view is compatible with the view taken by the United States Supreme Court and this court that a defendant has a right not to be interrogated without the presence of his counsel if he desires to have his counsel present, and that he must be advised of that right. But we do not think that the opinion there rendered can be fairly extended to hold that an investigating officer of the state or municipality may never take a statement from a person under arrest.

The fact that it has apparently never been suggested before that there is such a limitation upon the investigative powers of law enforcement officers does not prove that it does not exist, but it is a strong indication that such a restriction was not contemplated by those who framed the Canons of Professional Ethics, who must have been aware

of the practice of taking confessions of persons under arrest. If such a commonly accepted practice were thought to be unethical conduct per se, it would seem that express words would have been used to forbid it.

We think that, if the constitutional guarantees are scrupulously observed, persons under arrest will not give statements to the police unless they do so freely and voluntarily, with full awareness of their rights to counsel and to remain silent; and the evils of oppression, intimidation and unfair advantage will be avoided. It can be safely surmised, we think, that the purpose of canon 9 was to assure to civil litigants some of the protection from these influences which the federal and state constitutions guarantee to criminal defendants. Implicit in those constitutional guarantees are a recognition that the public has an interest in bringing to justice persons who have committed crimes and that it must have some reasonable investigative powers if this legitimate end is to be achieved. A confession which is in fact freely and voluntarily given has some probative value, although it is certainly not conclusive.

Law enforcement officials, who have a public duty prescribed for them by legislative act, should not be denied the right to pursue their investigations even to the point of taking confessions, so long as the means used do not violate the constitutional rights of the suspect or rights otherwise guaranteed to him by law. *See State v. Young,* 65 Wn.2d 938, 400 P.2d 374 (1965), holding such a confession admissible. *See also State v. Lung,* 70 Wn.2d 365, 423 P.2d 72 (1967).

We hold that canon 9 does not prohibit a prosecutor from using as evidence in the trial of a criminal case statements which were freely and voluntarily given by a person under arrest and detention to an investigating officer after that person had consulted his attorney and had been made aware of his right to remain silent or to have his attorney present when the statements were given The trial court found that the statements of the appellant were made under such conditions and the finding is supported by the evidence.

The second contention of the appellant is that there was insufficient evidence to support the verdict on the two charges of attempted rape. The prosecuting witness on one of those charges testified that the appellant's penis was soft when he pressed it against her genitals, after having forced her to disrobe and lie down and while he was lying on top of her. The other victim, who was also forced into the same position, testified that she did not remember or did not know whether it was soft or rigid. It is the theory of the appellant that his apparent inability to effect a penetration in each case rendered him incapable of attempted rape and the jury could only find that he indulged in preparation. He relies upon *State v. Meyer,* 37 Wn.2d 759, 226 P.2d 204 (1951).

In the cited case, the prosecuting witness was mentally incompetent and therefore incapable of consent. She had, however, attempted to assist the defendant in obtaining an erection but was unsuccessful. There was no evidence that he used force or intimidation to effect his purposes or that his penis was placed against her body. This court held that his advances did not go beyond the stage of preparation and therefore did not amount to attempted rape.

As the appellant states in his brief, an attempt to commit a crime consist of two elements: first, a criminal intent and, second, some form of overt act. *State v. Leach,* 36 Wn.2d 641, 219 P.2d 972 (1950). As we said in that case, intent may be inferred from all the facts and circumstances. Where preparation ceases and an attempt begins is a question dependent upon the facts of the particular case, there being no rigid formula to aid in the determination. *State v. Goddard,* 74 Wn.2d 854, 447 P.2d 180 (1968). As we said in that case, an overt act is sometimes described as a direct, ineffectual act done toward commission of a crime and, where the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt.

Here the appellant accosted the victims, young girls under 15 years of age, in a wooded area on a path leading down a hill, gave them to understand that he was going to

rape them, made them disrobe and lie down in a position designed to facilitate his purpose, lay on top of them, and made movements unmistakably referable to an attempt to effectuate that purpose. He was prevented in each case only by his own inability to achieve an erection. His acts, in short, were direct but ineffectual. The intent being made manifest and his acts directed toward its consummation being "overt" according to the definition given in *State v. Goddard, supra,* the evidence was clearly sufficient to support the verdict on these counts of attempted rape.

The final contention of the appellant is that the identification of the accused by three of the prosecuting witnesses was inadequate to sustain a verdict. This may be granted for purposes of argument. However, as the respondent points out, there was ample identification evidence. The appellant confessed that he attacked the girls, the details of his confession were consistent with the stories told by the victims, he led the police to corroborating physical evidence, and other physical evidence corroborated his account of the attacks and the accounts given by the victims. Even assuming that the identification testimony of the three victims (whom the appellant did not allow to see his face) was inadequate to sustain a verdict, that fact does not require a reversal since that verdict is supported by other evidence.

The judgment is affirmed.

HUNTER, C. J., HALE and NEILL, JJ., and ENNIS, J. Pro Tem., concur.

HALE, J. (concurring specially)—I have signed and approve the rationale of the majority opinion but would limit the operation of opinion No. 95 (1967) of the American Bar Association's Committee on Professional Ethics. The quoted opinion No. 95, although obviously purporting to apply only to civil actions against municipalities, recites a number of assumptions which might, on the authority of the instant case, serve to extend it to criminal cases. I would, therefore, regard the bar committee's opinion as no more than

an example in support of rather than a substantive authority for a declared rule.

In many areas of state, federal and municipal government, statutes, ordinances and charters impose upon a specific component of government the duty to investigate and prepare the defense of civil claims and to investigate and prepare the prosecution of criminal charges. In some instances, the laws creating this duty place it exclusively upon one of the investigative agencies and do not contemplate a referral to or intervention by the government's law office or lawyers until shortly before trial. Under the prevailing governmental scheme, whether state, federal or municipal, it may well be that the lawyers for the government are not to be consulted nor to participate in the investigation until the designated agency has completed its investigation and submitted its reports and evidence to the law department. The cited opinion No. 95 appears to ignore and runs contra to these procedures.

Although the opinions of the bar committee should be considered by the courts and accorded the weight which their intrinsic merit and intellectual force may merit, these opinions, in my view, ought not be allowed to control governmental procedures established by statute, charter and ordinance under the constitutions.

ENNIS, J. Pro Tem., concurs with HALE, J.