[No. 154-3.    Division Three.    July 13, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. KEDRICK VANCE HARKER, *Appellant.*

*Alf M. Jacobsen* (of *Jacobsen & Hanson*), for appellant (appointed counsel for appeal).

*Ted Kolbaba, Prosecuting Attorney,* for respondent.

EVANS, J.—Defendant Harker appeals from his conviction of an attempt to sell dangerous drugs (LSD) to a minor.

On October 7, 1969 Chips Warrington, age 17, and his father approached Officer Wise of the White Salmon Police Department regarding a drug problem in that community, and offered to obtain information concerning persons unlawfully selling drugs. Chips later met defendant Harker at Lyle High School. Harker at the time was helping the music teacher at the school present a class on psychedelic lights. Later, according to Chips' testimony, defendant approached him about buying LSD. On October 14, 1969 Chips contacted Officer Wise and told him of this incident. The following day defendant told Chips he was going to Portland to buy the LSD, which he in turn would sell to Chips. It was agreed Chips would call defendant at his home at 9 o'clock that evening to make arrangements for the sale.

Chips told Officer Wise of this conversation and Wise in turn made arrangements with other officers to apprehend defendant in the act of selling LSD. Chips called defendant at his home at the appointed time. As planned by Officer Wise, Chips made the telephone call to defendant from the Elma Cafe. Officer Wise was present and overheard the informant's part of the conversation.

Following the telephone conversation Chips reported to Officer Wise that Harker told him to walk down the highway which adjoined the cafe and defendant would pick him up. Chips followed those instructions while the officers observed. In a short time Officer Wise saw a car approach, stop and pick up Chips. Three persons were in the car—the defendant, who was driving, and a Kennedy Poyser and his wife. The car then made a U-turn and, as Chips testified, was driven to a lighted area on the highway so the parties could see what was being sold. Chips testified defendant reached under a coat in the back seat, pulled out a sack and handed it to Poyser. Before a sale was consummated the police closed in, stopped the car and arrested the defendant.

When the drugs were not found on defendant's person Chips was asked by Wise where the drugs were. Chips told

them they were on the floorboard on the passenger side. This was where Kennedy Poyser was sitting. When a search of the floorboard proved fruitless Wise again asked Chips where the drugs were. He answered, "The redheaded fellow (Poyser) has it. Can't you see him eating it now?" The police immediately began a search of Poyser. The drugs were found in Poyser's right sock. Prior to trial defendant moved to suppress the evidence of 33 tablets of LSD found on Poyser's person, claiming there was an unlawful search and seizure. The trial court refused to grant the motion, holding the arrest and incidental search were valid because Chips Warrington was a reliable informant and therefore the arresting officers had probable cause to place defendant under arrest.

Defendant's first and third assignments of error are directed to the question of the reliability of the informant. Defendant contends that informant's reliability was never properly determined by the police officer prior to acting under his information, in contravention of *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). We cannot agree. First, Officer Wise interviewed the informant on three occasions and had an opportunity to observe his demeanor. It is apparent the officer made a conscious effort to assess the reliability and veracity of the informant. Second, and most important, the information given by informant was borne out by later events which preceded the arrest. They occurred precisely as predicted by the informant. The defendant made a phone call at the precise time the informant indicated he would, and during that telephone call the officers heard the informant ask the party to whom he was talking if he had the "stuff". Following the phone call informant told the officers defendant had directed him to walk down the highway from the restaurant from which the call was made. Thereafter, informant did walk down the highway and defendant's vehicle appeared as predicted. It was of the make and basic color of the vehicle which informant had previously described to the police as being owned by defendant. Defendant's vehi-

cle stopped, informant got into the car and thereafter the car was turned and maneuvered in such a way as to lead the officers to believe the informant might be in danger. The accuracy with which the informant predicted defendant's behavior prior to his arrest was sufficient to lead a reasonable man to believe that the informant was reliable. *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959). The information supplied to the arresting officers by informant, plus the events which transpired before the arrest, clearly gave the officers probable cause to believe a felony was being committed.

▪ Defendant next argues that even if the officers had probable cause to arrest defendant they did not have probable cause to arrest Poyser; thus the subsequent search of Poyser was invalid. Assuming, without deciding, that defendant has standing to challenge the arrest of Poyser, his objections are not well taken. As already noted, Chips Warrington was a reliable informant. When the informant stated that Poyser had possession of the drugs the officers had probable cause to believe a felony was being committed in their presence—unlawful possession of LSD. *Spinelli v. United States, supra.*

▪ Defendant's final contention is that no overt acts were shown to have been committed by defendant in approaching the completion of the target crime, namely, the sale of LSD to a minor. We cannot agree. In *State v. Gay*, 4 Wn. App. 834, 841, 486 P.2d 341 (1971), the court made the following observations concerning whether an overt act had been committed so as to satisfy the requirements of an attempt:

> The fundamental reason back of the requirement of an overt act is that until such act occurs there is too much uncertainty that a criminal design is to be apparently carried out. When the conduct of the defendant becomes unequivocal and it appears that the design will be carried into effect if not interrupted, we have a condition that meets the test of overt acts intended to accomplish the target crime. *People v. Miller*, 2 Cal. 2d 527, 42 P.2d 308, 98 A.L.R. 913 (1935); *State v. Mandel, supra* [78

Ariz. 226, 278 P.2d 413 (1955)]. When the intent to commit the target crime is clearly shown, slight acts in furtherance thereof will constitute an attempt. *State v. Goddard, supra* [74 Wn.2d 848, 447 P.2d 180 (1968)].

Defendant's acts and conduct meet the above requirements.

Judgment affirmed.

MUNSON, C.J., and GREEN, J. concur.