[No. 21692. Department Two. December 6, 1929.]

STATE OF WASHINGTON, *Respondent,* v. EARL AWDE, *Appellant.*[1]

*Anderson & Richards, Arthur M. Harris, John F. Garvin,* and *Tucker & Tucker,* for appellant.

*Charles R. Denney,* for respondent.

MILLARD, J.—The information charged the defendant with the crime of being a common gambler, in that the defendant,

" . . . as the owner and manager thereof . . . did wilfully, unlawfully and feloniously, open, conduct, carry on and operate a gambling game commonly known as craps, the same being played and operated with dice and the same being a game of chance whereby money is bet, wagered and hazarded upon a chance and

[1]Reported in 282 Pac. 908.

uncertain and contingent event, and said gambling game was then and there played in a certain building known as the Olympic Tavern, in said county and state, contrary to the form of the statute . . ."

From a judgment and sentence based upon a verdict of guilty "of attempt to open a gambling game," the defendant has appealed.

Challenging the evidence as not sufficient to warrant the verdict, appellant complains of the following instruction given to the jury:

"You are instructed that if you believe, after considering all the evidence in the case beyond a reasonable doubt, that the defendant, on or about the date alleged, and in this county and state, as the owner or as manager thereof, provided and assembled by his own acts or through some other acting for him, the paraphernalia, parts and devices in evidence; that such were when so provided and assembled capable of being used and employed as a game of chance commonly known as craps, in that money or property, or any representative of either might be bet, wagered, or hazarded upon any chance, or uncertain or contingent event; all with the purpose, intent and design, on the part of the defendant that such paraphernalia, parts and devices should be so used and employed by those ones, if any, who should apply and so desire, then and in that event your verdict must be that the defendant is guilty of attempt to open a gambling game as alleged, even though there is no evidence that any game was actually and in fact played or that no one in fact applied for playing. Unless you shall so believe the facts necessary to constitute defendant guilty you shall acquit him."

The statute defines a common gambler to be—

"*Every person* who shall *open,* conduct, carry on or operate, whether *as owner,* manager, agent, dealer, clerk, or employee, and whether for hire or not, *any gambling game* or game of chance, *played with* cards, *dice,* or any other device, or any scheme or device *whereby money or property or any representative of*

*either, may be bet, wagered, or hazarded,* upon any chance, or any uncertain or contingent event, *shall be a common gambler,* . . ." Laws of 1909, p. 955, § 217; Rem. Comp. Stat., § 2469.

The statutory definition of an attempt to commit a crime reads as follows:

"An act done with intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime; . . ." Laws of 1909, p. 893, § 12; Rem. Comp. Stat., § 2264.

If there may be in law an attempt to open a gambling game or an attempt to become a common gambler, is the evidence in the case at bar sufficient to show more than an intent and preparation to open a gambling game?

It appears from the evidence that, about 10:30 p. m., December 31, 1927, a number of Federal prohibition officers visited the Olympic Tavern, a road house in Snohomish county. They informed the appellant who they were and were by him admitted and granted permission to search the place.

"A. Upon approaching the door, agent Regan knocked upon the door and the door was opened by— I believe by Mr. Awde. I am not certain who opened the door, and we went in and Regan informed him who we were and asked if we could look the place over. Mr. Awde said that we could and Mr. Murray and Mr. Fletcher went upstairs. Mr. Regan started in an easterly direction from the lobby and went through one room and into the room where the crap table was setting. I was a few paces behind him."

In one of the rooms was only one table, which witnesses testified was a crap table, approximately fifty-seven inches wide by one hundred and seven inches long, the top of which was covered by a green felt cloth. Upon that cloth was painted a white semi-circular diagram which was divided and subdivided into

sections in which white numerals were printed or painted. To the initiated, according to the testimony, the cloth with its numerals and signs thereon is a dice cloth, on which the stakes are placed and on which the game of dicing (in the vernacular, "shooting craps") is played. There were also upon the cloth a stick or rake and red dice (whether two or more the evidence does not disclose). The rake is an implement made use of by the man in charge of the game to rake in the money when the house wins. A man was standing at the crap table taking dollars from a money bag and stacking the money on the crap table. He had placed two stacks of dollars upon the table prior to the interruption by the officers. The appellant was at or near the table. Others were in the room, but no game was being played nor is there any evidence that any game had been played or any gambling done before the officers entered the room. There is testimony on the part of the officers that the appellant admitted that he was the owner and manager of the place.

It is the state's position that any person who opens any gambling game played with dice, whereby any money may be bet, is a common gambler, and that an act done with intent to commit the crime of opening a gambling game, and tending but failing to accomplish it, is an attempt to commit that crime.

"An attempt to commit a crime is an act done with intent to commit it, beyond mere preparation, but falling short of its actual commission." 12 Cyc. 177.

An unlawful attempt is compounded of two elements:

"Two things are necessary: first, a criminal intent; and second, some form of overt act." *State v. Cass*, 146 Wash. 585, 264 Pac. 7.

That the intention was sufficient, clearly appears from the evidence. The next inquiry is whether the act

or acts were adequate to constitute an attempt. There can be no such thing as an attempt to attempt to commit a crime, and that is all that the evidence discloses in the case at bar. That the appellant intended to open a gambling game, may be conceded. That he made preparations for committing the ignoble offense by setting up the table and assembling the gambling implements, is manifest. The intent and preparation have been proved, but the essential element of an overt act is absent. The crap table with its paraphernalia may be a mute invitation to gamble, but there is no evidence other than that of an attempt to open the game. The weaving of the web is evidence of the intent of the spider, but, until some overt act is shown of attempt to ensnare the victim, there is no attempt in a legal sense.

"There is a distinction, though it is not so very clearly defined, between preparation and attempt. For a man to make up his mind to commit a crime, and to make preparations to commit it, is not an attempt. He must go further than mere preparation, and do some act directly tending to a carrying out of his unlawful intent. 'Between preparations for the attempt and the attempt itself,' it has been said, 'there is a wide difference. *The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement* towards the commission after the preparations are made.' " Brill, Cyc. of Criminal Law, vol. 1, § 152.

Granting, *arguendo,* that the owning of the equipment is *prima facie* evidence of intent to open a gambling game, therefore an intent is present to become under the statute a common gambler, no other act was proved than the setting up of the table, the assembling of the equipment and stacking of the money. These facts are not sufficient to sustain the verdict, as intent

and preparation are not punishable under our criminal code.

In criminal cases the court's jurisdiction extends only to such matters as the law declares criminal. It may be argued that the statute clearly by its terms makes criminal the opening of a gambling game; that the acceptance of the invitation to gamble was interrupted by the arrival of the officers; and that the last step or attempt had been made prior to the interruption to open a gambling game in defiance of the statute.

The dealer or man behind the table had not completed stacking the money for use in the game, hence the preparations had not been fully completed, but that may be disregarded. The invitation or solicitation by the prepared table is not an act sufficient to be called an attempt. We agree that the preparations here made constituted an attempt in a highly moral sense, but not in a legal sense.

". . . in morals, the rule laid down by our Savior in a case of adultery is, that the mere imagining or designing of evil is equivalent to the doing; but we have just seen, that in our jurisprudence no such rule prevails, . . ." Bishop on Criminal Law, vol. 1 (7th ed.), § 209.

The appellant could not become a common gambler until he had opened a gambling game. To attempt to open the game, an act must be done which in the very nature of things would consummate the offense and make the completed crime. It is doubtful whether there can be such an offense under our statute as an attempt to open a gambling game or an attempt to become a common gambler. When the preparatory stage is passed, the game is opened, and the major offense committed. Conceding that the prepared gambling table was an invitation or solicitation to gamble, a situation analogous to *State v. Butler,* 8 Wash. 194, 35 Pac. 1093, 40 Am. St. 900, 25 L. R. A. 434, would be presented.

In that case it was held that solicitation to commit adultery was not indictable as an attempt to commit the crime of adultery. The court said:

"Now it seems to us that solicitation to commit adultery is no part of the act of adultery itself, and consequently cannot be held to be an attempt. What is it? It involves the expression of a desire and a willingness on the part of one person to commit the act of adultery with another, and an attempt to get that person's consent, but no more. Follow it a step farther. Suppose the consent of the other person is obtained, and in pursuance of it, if there is no immediate opportunity to gratify the then mutual desire, a conspiracy is entered into to commit the offense between these persons, which involves the expressed consent and agreement of both of them, and some understanding between them as to when and where the offense shall be committed, and the naming of a propitious time and place to commit it. It seems that this would be much more in the way of an attempt than the case presented here, and if that does not amount to an offense or an attempt, how can it be said that such an intention and willingness, coupled with solicitation upon the part of one person only, can amount to an attempt to commit the offense?"

In the case at bar the intention has been proved; the preparation or willingness to open a game has been established. However, assuming the preparation constituted an implied invitation or solicitation, no attempt in the legal sense has been shown.

The judgment is reversed and the cause remanded with instructions to dismiss.

MAIN, FRENCH, PARKER, and BEALS, JJ., concur.