[Nos. 29-40416, 40422, 40693-3. Division Three. November 19, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. BEN COLEMAN *et al., Appellants.*

*Lawrence Cary Smith,* (of *Smith, Smith & Smith*) for appellants.

*Donald C. Brockett, Prosecuting Attorney,* for respondent.

GREEN, J.—Defendants appeal from conviction of the following crimes: Ben Coleman, four counts of being a common gambler (RCW 9.47.010) and three counts of possession of gambling devices (RCW 9.47.030); David L. Goree and William V. Priest, two and four counts, respectively, of gambling (RCW 9.47.020).

The charges arose out of incidents beginning January 31, 1968 and ending February 3, 1968. Spokane Police Officer Alfred Langan was assigned to a detail covering gambling activities in the city. On the evening of January 31, Langan, without disclosing his official identity, went to the home of defendant Coleman to engage in gambling. Defendant Priest was present on arrival. Defendants Coleman and Goree, who were out when Langan arrived, returned shortly thereafter. Langan then reminded Coleman of a meeting the previous summer at the Idaho state line where gambling was discussed. At that meeting, Coleman told Langan, who was then a construction worker, that he was a contractor who had recently moved to a nice home in Spokane and wanted to start some card games where construction workers like Langan could come and play. For those games, Coleman told Langan he was looking for a dealer.

Coleman seemed to recognize Langan and thereupon invited him to the basement to see the layout. Langan was shown a dice table, various card tables and a bar. Langan asked Coleman if he wanted to shoot some dice. Coleman called upstairs for some dice. Thereafter, Coleman, Priest

and Langan engaged in a game of craps. Langan lost about $22. Goree watched.

Based on these incidents, Coleman was convicted of one count of being a common gambler and one count of possession of a gambling device; Priest was convicted of one count of gambling with dice.

On February 1, Langan returned to the Coleman home. Coleman told him there would be a party with gambling the following night; that in the past Coleman had seen from $300 to $500 on the table; that no one would be squeezed out; and if Langan came early, there would be girls but Langan would have to haggle over the price.

About 10:30 p.m. the following night, February 2, Langan and Officer James McCabe went to the Coleman home. Shortly after arrival, Langan, McCabe, Coleman, Goree and Priest went to the basement and set up a poker game. Although in the area from time to time, Coleman did not play cards. The others took their turn dealing in various card games with a 50-cent ante. After losing most of their money, the officers departed.

They returned with more money about 1:30 a.m. on February 3 and found the number of people present had risen to 15-20. They rejoined the poker game, making approximately six players including Goree and Priest. Langan and McCabe each testified that Goree took 50 cents from each pot as a "house pull" and put it in a leather pouch. (There was testimony that Coleman made change from the pouch.)

About 2 a.m., Cassk Thomas arrived at the Coleman house. Fearing he might be identified by Thomas, who knew him, Langan feigned illness and left with McCabe for the police station where a raiding party was organized. Shortly thereafter, they returned accompanied by the raiding party. Inspector O'Brien testified that as they approached the back porch he heard sounds emanating from inside the house, indicating some type of contest or game was going on and that he specifically heard the words, "Come on, dice." Langan opened the door; the officers followed him to the bottom of the stairs where they were met

by Coleman. In a basement room, five or six persons, including Goree and Priest, were standing around a dice table with varied amounts of money on the table in front of them. The officers tagged the money with the name of the person standing next to it.

A prosecution witness, H. B. Fedrick, who was present when the raid occurred, testified that he met some fellows in downtown Spokane who told him there might be a card game around and that he went with them to the Coleman home in the very early hours of February 3. There they were met by the lady of the house who hung their coats. They went directly to a 10 x 12-foot basement room where Fedrick joined a group at a card table with a light bulb and plate reflector low and right over it and played poker with a 50-cent ante. Fedrick stated that 50 cents was taken as a rake-off on each pot. After losing his money, Fedrick noticed in an adjacent 9 x 10-foot room six or seven people standing around what appeared to be a 4 x 6-foot dice table with boards 8 or 9 inches high around its perimeter and a light directly over it. He heard dice shaken and heard them rattle against the sides of the table on three or four occasions; but, he saw no money since he was not close enough to look directly onto the table.

While searching the basement, the police found both assembled and unassembled gambling equipment including a cigar box containing dice, a dice cup and dice on a dice table with a green felt cover, card tables and several decks of cards stored behind the bar. In a locked, front upstairs bedroom, a small electric hand-drill, a child's lunchbox containing, among other things, a bottle of mercury, and a woman's purse containing altered dice and cards were found.

From these events, Coleman was convicted of one count of being a common gambler with cards on February 2 and one count each of possession of gambling devices on February 2 and 3, and one count each of being a common gambler with dice and cards on February 3; Priest was convicted of one count of gambling with cards on February 2

and one count each of gambling with dice and cards on February 3; Goree was convicted of one count each of gambling with cards on February 2 and 3.

Testimony of Goree and Priest was at variance with that produced by the state. The jury, however, was entitled to believe the testimony of the state's witnesses and could have believed the facts as outlined above. Coleman did not testify.

 First, defendants claim the trial court erred in failing to dismiss count 1 charging Coleman with being a common gambler with dice on February 3 and count 3 charging Goree and Priest with gambling with dice on February 3. Goree was acquitted. (Assignment of error 1) Defendants argue the evidence failed to show actual gambling with dice and at most only preparation to gamble, which is insufficient to justify submission of these counts to the jury. We disagree.

[A] *challenge to the sufficiency of the evidence requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party,* and whether the evidence is sufficient to submit the issue to the jury is a question of law for the court and no element of discretion is involved.

(Italics ours.) *State v. Zorich,* 72 Wn.2d 31, 34, 431 P.2d 584 (1967).

RCW 9.47.010 provides:

Every person who shall open, conduct, carry on or operate, whether as owner, manager . . . any gambling game or game of chance, played with . . . dice . . . whereby any money or property . . . may be bet, wagered or hazarded . . . shall be a common gambler . . .

A dice table with a green felt covering, on which there were dice and a dice cup, was set up in Coleman's basement and had been used for gambling on January 31 when Langan visited the Coleman residence; Fedrick, while observing a group around the dice table, heard dice being shaken and rattled against the sides of the dice table; Officer O'Brien heard words ("Come on, dice.") indicating a dice game was

in progress as he approached the rear of the house on February 3; the dice on the table were loaded and altered dice were found in an upstairs bedroom from which source dice were obtained for use on January 31; throughout the activity on February 3, Coleman was moving about the basement; and Coleman met the officers at the bottom of the stairs at the time of the raid. We believe there was substantial evidence from which a jury could find Coleman guilty of being a common gambler on February 3, and no error resulted by the submission of count 1 to the jury.

In count 3 of the information, Priest was charged with gambling with dice on February 3 in violation of RCW 9.47.020:

> Gambling. Every person who shall bet . . . upon any game . . . opened, conducted, carried on or operated in violation of RCW 9.47.010 shall be guilty of a misdemeanor.

It is undisputed that when the police arrived, Priest was standing beside the dice table with money in front of him. He testified that, "my bet was down there . . . " It is not necessary that the event upon which the money is wagered actually take place. *State v. Cross*, 22 Wn.2d 402, 156 P.2d 416 (1945). When individual dice players place their bet, the preparatory stage is passed, the offense is consummated and the crime completed. The instant case is to be distinguished from *State v. Awde*, 154 Wash. 463, 282 P. 908 (1929) relied upon by defendants where no bets were down and only mere preparation was shown. To the contrary, in the instant case, the bets were down and there was evidence from which the jury could have found that dice were being rolled for money. It is not necessary that proof of gambling go to the point of ocular demonstration or direct testimony of witnesses. All that is necessary under the rule requiring that guilt be established beyond a reasonable doubt is that the guilt of the accused be fairly inferred. *State v. Nickerson*, 153 Wash. 160, 279 P. 401 (1929); *State v. Adams*, 181 Wash. 222, 227, 43 P.2d 1 (1935). Count 3 was properly submitted to the jury.

Since more than mere preparation was shown, the court properly refused defendants' proposed instruction No. 3 to the effect that total preparation to gamble was not sufficient to prove the crime of gambling. (Assignment of error 9)

Second, defendants contend the trial court erred in allowing certain testimony which defendants argue tended to show that defendant Coleman was operating a gambling house. (Assignments of error 2, 3, 4) The court refused to strike Officer McCabe's testimony that ". . . Coleman was just circulating. I never saw him play. He was more or less in a supervisory capacity, I would say." And Officer Langan's testimony at the time of the raid that "it appeared that they were gambling." In each instance, testimony was subsequently developed disclosing the factual basis for each statement. In any event, each witness was testifying as to his observation and was subject to cross-examination. Under all the circumstances, we find that the trial court did not err in refusing to strike this testimony. Contrary to defendants' contention, the trial court properly allowed Langan to testify as to Coleman's statement that "if you come around early, we will have some girls there" since it was part of Coleman's statement extending an invitation to Langan to gamble on the evening of February 2.

Over defendants' objection, Inspector O'Brien was permitted to describe the dice game "4-5-6." This testimony was properly admitted. In the game "4-5-6," players gamble against the house. Loaded dice were found on the dice table at the time of the raid, and altered dice in a locked, front upstairs bedroom. These dice were altered in such a way as to result in an advantage to the house when this game was played. Goree testified that at the time the police raid occurred, there was discussion between the players as to playing the game of "4-5-6." There was no error in the admission of this testimony, as it bore directly on the issue of whether Coleman was a common gambler.

Third, error is assigned to the admission of a lady's handbag full of dice, a small electric drill and a child's

lunchbox containing various items including a bottle of mercury. (Assignment of error 5) It is argued that the admission of these items prejudiced the minds of the jury and tended to prove the commission of another crime. We find no error in the admission of these exhibits. Coleman was charged with being both a common gambler with dice and possession of gambling devices. When Langan first visited Coleman's home and went to the basement to engage in a dice game, Coleman called upstairs for dice. These dice were then used in a dice game in which Coleman participated. The drill and mercury were items that could be used for the alteration of dice. Altered or loaded dice were found in the lady's handbag and on the dice table in the basement. All of this evidence was admissible on the issue of whether Coleman was the owner or manager of the gambling operation conducted in the basement. The exhibits were an inseparable part of the whole deed. They were relevant insofar as they tended to prove the crimes of being a common gambler and the possession of gambling devices. *State v. Niblack,* 74 Wn.2d 200, 206, 207, 443 P.2d 809 (1968).

■ Fourth, defendants contend error was committed in the giving of instruction No. 6 substantially in the words of RCW 9.47.010 under which defendant Coleman was charged, and in not giving their requested instruction No. 1. (Assignments of error 6, 7) Instruction No. 6 was properly given. Defendants' proposed instruction in pertinent part was as follows:

> If you should find that the evidence establishes that a number of persons were playing a game of chance in which no one of the players in particular operates, conducts or opens the game, then concerning which it could be said that all of the persons were equally operators, then you must find that the defendant Ben Coleman is not guilty of the crime of being a common gambler.

The proposed instruction is negative in form. Defendants' theory, which was argued to the jury, was that they were engaged in a social game of gambling. The court did not have to do more than instruct the jury as to the elements of

the crime of being a common gambler as contained in RCW 9.47.010. When the instructions adequately cover the issues joined, the court need not give negative instructions. *State v. Gunderson*, 74 Wn.2d 226, 444 P.2d 156 (1968).

 Fifth, error is asserted in the court's refusal to instruct on entrapment. (Assignment of error 8) In *Seattle v. Muldrew*, 71 Wn.2d 903, 431 P.2d 589 (1967), the court said:

> While recognizing the defense of entrapment, we have consistently held that to be successfully invoked, the criminal design must originate in the mind of the police officer and not with the accused; and the accused must be lured or induced to commit a crime she had not intended to commit. If the crime originates in the mind of the accused, an officer may, when acting in good faith, make use of deception.

There was no error in refusing to instruct on entrapment. Langan merely presented the opportunity to gamble, pursuant to an implied invitation to gamble which he received from Coleman the previous summer at the Idaho state line.

Sixth, error is assigned to the giving of instructions 8, 9, 15 and 18, which in substance are that possession of a gambling device or apparatus is a crime. (Assignments of error 10, 11, 12) Coleman was charged with possession of gambling devices under RCW 9.47.030:

> Every person who shall have in his possession or shall permit to be placed or kept in any building . . . or part thereof, owned, leased or occupied by him, any table . . . or any other article, device or apparatus of a kind commonly used for gambling, or operated for the losing or winning of any money . . . upon any chance or uncertain or contingent event, shall be guilty of a gross misdemeanor.

Defendant Coleman contends that mere possession is not a crime and that a crime is committed under the foregoing statute only when the device is used for gambling purposes under the provisions of RCW 9.47.010-020. In the instant case, the defendant was convicted of being a common gam-

bler and gambling with dice and cards on the premises. The devices in Coleman's possession were the ones used in these offenses. All the conditions of defendants' objections are met. Since more than mere possession exists in this case, defendants' contention is without merit. There was no error in the giving of these instructions. *State v. Jones,* 67 Wn.2d 506, 408 P.2d 247 (1965); *State v. Parent,* 156 Wash. 604, 606, 287 P. 662 (1930).

Last, defendants claim error in the giving of instructions No. 11, 13, 16 and 19. (Assignments of error 13, 14, 15, 16) It is asserted that under these instructions, in order to convict Goree and Priest of gambling, the jury had to first convict Coleman of being a common gambler and that this interdependency of instructions, one upon the other, was prejudicial to defendants. Coleman was specifically charged with being a common gambler under RCW 9.47.010. Before the jury could find Coleman guilty of those charges, they had to first determine that he did in fact "open, conduct, carry on or operate a gambling game" in one of the capacities covered by the statute. Goree and Priest were charged with gambling in games conducted by Coleman. Before they could be convicted under RCW 9.47.020—of gambling —it was necessary that they bet or wager upon a ". . . game, scheme, or device, opened, conducted, carried on or operated in violation of RCW 9.47.010 . . ." The interdependency of the statutes is evident. The instructions given by the trial court were correct.

Judgment is affirmed.

Evans, C. J., and Munson, J., concur.

---

Petition for rehearing granted January 12, 1970.