[No. 29278-1-I. Division One. December 21, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. HERIBERTO GONZALES PULIDO, ET AL, *Defendants*, JORGE EQUIHUA LEMUS, *Appellant.*

*David G. Skeen,* for appellant.

*Norm Maleng, Prosecuting Attorney, Theresa L. Fricke, Senior Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

WEBSTER, A.C.J. — Jorge E. Lemus appeals his conviction of delivery of a controlled substance (cocaine).

## FACTS

On April 16, 1991, a police informant introduced Detective R.J. to Jose Sanchez so that the detective could purchase a kilo of cocaine. Sanchez stated they would have to meet Lemus, his cousin, in order to get the amount requested. The three then met Lemus at a Bellevue restaurant and after settling on a price of $60,000, Lemus told the detective that he would drive to Yakima to pick up the drugs. Lemus and Sanchez then departed.

At 2 a.m. on April 17, Sanchez called the informant and stated he would be driving to the informant's apartment (along with five other people) in a Blazer and a Camaro. When Sanchez arrived, he refused to complete the deal in the informant's apartment, instead insisting that the transaction be completed in the parking lot outside. When the informant refused, Sanchez eventually agreed and returned to the apartment with codefendants Pulido and Reyes. After a series of nonsignificant events, the cocaine was brought to the apartment, the detective gave the "good buy" signal, and the police moved in for the arrest.

Upon entry, the officers witnessed Reyes drop a loaded .45-caliber gun. Other individuals, including Lemus, who had remained in the Blazer and Camaro in the parking lot during the transaction, were then arrested. One individual was found in the Blazer along with a .38-caliber weapon under the driver's seat. Lemus was found sitting in the passenger seat of the Camaro. No firearms were seized from the Camaro.

At trial, Lemus denied any involvement in the drug sale, claiming he was merely asked by Sanchez for a ride to

Yakima without knowing the purpose of the trip. He further denied ever discussing the transaction with the informant and the detective.

Prior to trial, the State notified the court of its intent to present evidence obtained from a "1-party" wire pursuant to RCW 9.73.230.[1] Lemus responded by making a CrR 3.6 suppression motion on the basis that the wire violated his state and federal constitutional rights. The trial court ruled the tapes were admissible but failed to enter written findings of fact and conclusions of law as required by CrR 3.6.

On September 13, 1991, after a jury verdict of guilty, Lemus was sentenced to 36 months, 12 of which were based on a special verdict finding Lemus or an accomplice armed with a deadly weapon at the time of the offense.

## DISCUSSION

Lemus first claims his conviction must be reversed since the trial court failed to enter written findings of fact and conclusions of law as required by CrR 3.6. CrR 3.6 states:

> At the conclusion of a hearing, upon a motion to suppress physical, oral or identification evidence the trial court *shall* set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) the court's findings as to the disputed facts; and (4) the

---

[1] RCW 9.73.230 reads in part:

"(1) As part of a bona fide criminal investigation, the chief law enforcement officer of a law enforcement agency or his or her designee above the rank of first line supervisor may authorize the interception, transmission, or recording of a conversation or communication by officers under the following circumstances:

"(a) At least one party to the conversation or communication has consented . . .;

"(b) Probable cause exists to believe that the conversation or communication involves the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances . . . ; and

"(c) A written report has been completed as required by subsection (2) of this section.
" . . . .

"(8) In any subsequent judicial proceeding, evidence obtained through the interception or recording of a conversation or communication pursuant to this section shall be admissible only if:

"(a) The court finds that the requirements of subsection (1) of this section were met and the evidence is used in prosecuting an offense listed in subsection (1)(b) of this section;"

court's reason for the admissibility or inadmissibility of the evidence sought to be suppressed.

(Italics ours.) Lemus claims it would be prejudicial to allow the State to supplement the record after having read his opening brief. He cites *State v. Witherspoon*, 60 Wn. App. 569, 805 P.2d 248 (1991), where the court rejected the State's argument that the trial court's oral opinion could be treated as compliance with JuCR 7.11(d) (requiring written findings and conclusions within 21 days of the filing of the notice of appeal). The court held that "the practice of permitting findings to be entered after the appellant has framed the issues in his brief has an appearance of unfairness" and that the complete noncompliance with JuCR 7.11 (no findings or conclusions were ever filed) necessitated reversal. *Witherspoon*, at 572; *see also State v. Agee*, 89 Wn.2d 416, 573 P.2d 355 (1977) (where the court held that written findings and conclusions must be entered after a suppression hearing); *State v. Bennett*, 62 Wn. App. 702, 814 P.2d 1171 (1991) (the court, while stating that there must be a meaningful set of findings and conclusions to permit appellate review of a juvenile case, declined to reverse since there had been no showing of prejudice), *review denied*, 118 Wn.2d 1017 (1992); *State v. Charlie*, 62 Wn. App. 729, 815 P.2d 819 (1991) (the court reversed a juvenile conviction absent a showing of prejudice — since the appellant could have filed a supplemental brief after the findings were entered prior to oral argument on appeal — based on the egregious and cumulative errors and the appearance of unfairness in allowing the State to enter such findings after the issues in the case had been framed). According to Lemus, as in *Witherspoon*, since he is presently serving his sentence, he would be prejudiced if, after remand, this court eventually ruled in his favor on the merits of the appeal.

■ We find that Lemus's claim must fail. The purpose of CrR 3.6 is to have a record made so as "to aid an appellate court on review." *State v. Stock*, 44 Wn. App. 467, 477, 722 P.2d 1330 (1986). Here, Lemus's claim is purely one of law

(*i.e.*, that RCW 9.73.230 is unconstitutional). Therefore, written findings or conclusions would be superfluous. Although the mandate of the rule is clear (written findings and conclusions *shall* be entered), such would be useless since this court can review the trial court's holding that the evidence admitted on the tape is admissible and the implied holding that the statute is constitutional. Since there are no facts underlying the CrR 3.6 hearing that would influence this court's decision, we are not impeded from reviewing the dispute as it exists on the record.[2]

■ Lemus next claims that RCW 9.73.230 is unconstitutional under article 1, section 7 of the Washington State Constitution and the fourth and fourteenth amendments to the United States Constitution. We disagree. The Washington Supreme Court has definitively held that "RCW 9.73.230 does not violate Const. art. 1, § 7." *State v. Salinas*, 119 Wn.2d 192, 199, 829 P.2d 1068 (1992). The court stated that "where one party . . . consents to the contents of the conversation being recorded . . . there [is] no expectation of privacy and Const. art. 1, § 7 [does] not prevent the disclosure of the conversation." *Salinas*, at 197. However, the court was not asked, as this court is apparently asked to do now, "to review the privacy issue under the fourth amendment to the United States Constitution". *Salinas*, at 197. Nevertheless, we find that RCW 9.73.230 does not violate the Fourth Amendment.

The federal rule regarding 1-party consent to intercept private communications without a judicially approved warrant is clear:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic

---

[2]In *State v. Clark*, 46 Wn. App. 856, 732 P.2d 1029, *review denied*, 108 Wn.2d 1014 (1987), this court enunciated the rule regarding written findings and conclusions after a CrR 3.6 suppression motion: "Although formal findings and conclusions are required by CrR 3.6, the court's comprehensive oral opinion and the record of the hearing render the error harmless." *Clark*, at 859; *State v. Stock, supra* at 477; *State v. Rowe*, 63 Wn. App. 750, 752 n.2, 822 P.2d 290 (1991); *State v. Smith*, 67 Wn. App. 81, 834 P.2d 26 (1992). However, here there was no oral record and only a brief comment by the court that it was allowing the evidence.

communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. . . .

18 U.S.C. § 2511(2)(c). The federal courts have unanimously upheld this provision as constitutional. *See United States v. Keen*, 508 F.2d 986, 989 (9th Cir. 1974) ("[w]ire taps obtained with the consent of one party to a conversation do not violate the fourth amendment"), *cert. denied*, 421 U.S. 929 (1975); *United States v. Zemek*, 634 F.2d 1159, 1164 n.4 (9th Cir. 1980), *cert. denied sub nom. Mazzuca v. United States*, 452 U.S. 905 (1981); *United States v. Hodge*, 539 F.2d 898 (6th Cir. 1976) (the court held that since no one has a constitutionally protected expectation that the person to whom he voluntarily reveals incriminating information will keep it secret, the consensual interceptions permitted under 18 U.S.C. § 2511(2)(c) do not violate the Fourth Amendment), *cert. denied sub nom. Robinson v. United States*, 429 U.S. 1091 (1977); *United States v. Quintana*, 508 F.2d 867, 872 n.3 (7th Cir. 1975); *see also United States v. White*, 401 U.S. 745, 751, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971); *United States v. Caceres*, 440 U.S. 741, 744, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979). We hold, in line with the unanimous federal authorities, that "1-party consent" does not violate the Fourth Amendment.

Lemus next claims that his sentence was erroneously enhanced on the basis that he or an accomplice was armed with a deadly weapon at the time of the commission of the crime. He cites *State v. McKim*, 98 Wn.2d 111, 653 P.2d 1040 (1982), where the court stated:

We interpret the language of RCW 9.95.015 as requiring a special finding of fact that an accused was either actually armed with a deadly weapon or was constructively armed with such a weapon. The phrase 'constructively armed with a deadly weapon' means the accused's accomplice must have been actually armed with a deadly weapon and the accused must have had *knowledge* that the accomplice was so armed.

*McKim*, at 117. According to Lemus, the enhancement of his sentence was improper since there was no finding that

either he or an accomplice was "actually" armed or that he had "knowledge" that any accomplice was armed.

 Lemus's claim must fail. In *State v. Bilal*, 54 Wn. App. 778, 776 P.2d 153, *review denied*, 113 Wn.2d 1020 (1989), the court held that the "plain" and "unambiguous" language of "the [Sentencing Reform Act of 1981 (SRA)] reversed the holding in *State v. McKim*" and that the inclusion of the words "or an accomplice" left "no doubt that the statute was intended to apply whenever the defendant or an accomplice was armed." *Bilal*, at 781-82.[3]

The judgment is affirmed.

SCHOLFIELD and COLEMAN, JJ., concur.

Review denied at 121 Wn.2d 1018 (1993).

---

[3]The *Bilal* case was decided after the enactment of the SRA and RCW 9.94A.125 specifically. That statute states in part: "the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not *the defendant or an accomplice* was armed with a deadly weapon at the time of the commission of the crime." (Italics ours.) *See also* RCW 9.94A.310(3) ("[t]he following additional times shall be added to [any drug offense] sentence if the offender *or an accomplice* was armed with a deadly weapon". (Italics ours.))