[No. 59905-0.   En Banc.   March 24, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ALLAN B. CORLISS, *Petitioner*.

*Irene Tanabe* of *Washington Appellate Defender Association*, for petitioner.

*Seth R. Dawson, Prosecuting Attorney*, and *David Thiele, Deputy*, for respondent.

SMITH, J. — Petitioner Allan B. Corliss (Petitioner) seeks review of his May 28, 1991 conviction in the Snohomish

County Superior Court for violation of the Uniform Controlled Substances Act by attempted possession of a controlled substance (marijuana) with intent to deliver.[1] He contends that police officers violated the privacy act in arranging a telephone conversation with him and monitoring it by the process of tilting the telephone receiver held by an informant who telephoned him. The Court of Appeals, Division One, affirmed the conviction on November 9, 1992.[2] On March 4, 1993, this court granted review. We affirm the Court of Appeals.

STATEMENT OF FACTS

Petitioner Allan B. Corliss stipulated to the facts stated in police reports.[3] On May 10, 1990, Tom Gibler contacted Detective Paul C. Watkins of the South Snohomish County Narcotics Task Force. Because charges were pending against him, Mr. Gibler indicated that he wished to provide information on two marijuana dealers whom he knew as "Al" and "Brent".[4] Law enforcement officials identified "Al" as Allan B. Corliss and "Brent" as Brent Walker. Detective Watkins and Mr. Gibler planned a transaction in which Detective Watkins, posing as a marijuana supplier, would offer to sell Petitioner Corliss and Mr. Walker 3 pounds of marijuana. That night, between 10:45 p.m. and 12:12 a.m. on May 11, 1990, Mr. Gibler spoke by telephone with one or the other of the two "dealers" on six occasions.

At the May 23, 1991 hearing on a motion to suppress evidence, in response to questions by Petitioner's attorney, Detective Watkins testified about the location of the telephones used by Mr. Gibler:

Q: Now why is it that you used the telephone outside the police department?

---

[1]RCW 69.50.401(a); RCW 69.50.407; RCW 9A.28.020.

[2]*State v. Corliss*, 67 Wn. App. 708, 838 P.2d 1149 (1992).

[3]Defendant's Clerk's Papers, at 15-17.

[4]Verbatim Report of Proceedings (May 23, 1991), at 8 (the Honorable Gerald L. Knight, Snohomish County Superior Court); Defendant's Clerk's Papers, at 15.

A: Because we were paging Mr. Corliss and his partner Mr. Walker, and the last thing I wanted to do is [*sic*] call a phone number with somebody answering "Edmonds Police Department."

Q: So the telephone call that Mr. Gibler was making was to a pager?

A: Yes, yes. Some may have been directly, I can't recall. It originally started with paging and then some may have been called directly. We used the pay phone out front of Edmonds Police Department and also another line in my office which is only answered in my office.[5]

On direct examination at the same hearing, Detective Watkins explained how he was able to monitor the conversations:

Q: Did you monitor those phone conversations?

A: Yes, I did.

Q: How was that accomplished?

A: Standing next to Mr. Gibler he tipped or canted the phone receiver so that both he and I could hear the conversation.

Q: Was that at your request, or how did you arrange that?

A: I asked if Mr. Gibler minded if I monitored, and he said no, asked how I would do it, and I suggested that he just tip the phone so that we could both hear.

Q: There were a series of phone conversations made the evening of May 10th?

A: Yes, there was.

Q: Okay. And during each conversation you monitored, that was how the monitoring was done; is that right?

A: That's correct.[6]

Using the "tilted receiver" method, Detective Watkins monitored some of the calls and Detective Mark Connor monitored the others.[7]

During the last telephone conversation, Tom Gibler arranged for a meeting between the "dealers" and Detective Watkins at 12:40 a.m. on May 11, 1990, at a parking lot in Mountlake Terrace. The meeting took place as agreed.

---

[5]Verbatim Report of Proceedings (May 23, 1991), at 7-8 (the Honorable Gerald L. Knight, Snohomish County Superior Court).

[6]Verbatim Report of Proceedings (May 23, 1991), at 5 (the Honorable Gerald L. Knight, Snohomish County Superior Court).

[7]Verbatim Report of Proceedings (May 23, 1991), at 4-5 (the Honorable Gerald L. Knight, Snohomish County Superior Court).

When Petitioner Corliss handed to Detective Watkins $6,300 for 3 pounds of marijuana, police officers arrested Petitioner Corliss and Brent Walker.[8]

On January 15, 1991, the Snohomish County Prosecuting Attorney filed an information charging Petitioner Allan B. Corliss with attempted possession of a controlled substance (marijuana) with intent to manufacture or deliver, in violation of RCW 69.50.401(a), RCW 69.50.407, and RCW 9A.28.020.[9]

On May 21, 1991, claiming illegal monitoring of the telephone conversations in violation of the privacy act, RCW 9.73, Petitioner Corliss moved to suppress evidence obtained at the May 11, 1990 meeting.[10] The court denied the motion on May 23, 1991.[11] In the CrR 3.6 certificate, the court stated as its reasons for the ruling denying the motion to suppress that the officers did not violate the privacy act, and even if they did, *State v. Fjermestad*[12] "would [not] mandate suppression of the evidence gathered during the meeting. . . ."[13]

On May 28, 1991, after Petitioner Corliss had waived his right to a jury trial and proceeded to trial on stipulated facts before the Honorable James H. Allendoerfer, Snohomish County Superior Court, the court found Petitioner "guilty" of the January 15, 1991 charge.[14] Petitioner Corliss filed a notice of appeal on June 18, 1991.[15]

---

[8]The arrest team consisted of Mountlake Terrace Officers Noll, Miller, Blackburn, and Grisham, and Detectives Connor and Miller. Defendant's Clerk's Papers, at 17.

[9]Defendant's Clerk's Papers, at 19.

[10]Defendant's Clerk's Papers, at 13-14.

[11]Verbatim Report of Proceedings (May 23, 1991), at 18-19 (the Honorable Gerald L. Knight, Snohomish County Superior Court).

[12]114 Wn.2d 828, 791 P.2d 897 (1990).

[13]Certificate Pursuant to CrR 3.6 of the Criminal Rules for Suppression Hearings; Defendant's Clerk's Papers, at 11.

[14]Verbatim Report of Proceedings (May 28, 1991), at 5-6 (the Honorable James H. Allendoerfer, Snohomish County Superior Court).

[15]Defendant's Clerk's Papers, at 2.

As the basis for his appeal, Petitioner Corliss asserted that the trial court should have suppressed all evidence obtained by the interception of telephone calls on May 10 and 11, 1990. The Court of Appeals stated the issue as "whether the police violated the central tenet of the privacy act, RCW 9.73.030."[16] The court identified and reviewed two relevant cases, *State v. Jennen*[17] and *State v. Bonilla,* [18] and determined that "[i]f overhearing conversations on an extension line does not constitute a privacy act violation under *Jennen* and *Bonilla,* listening to a phone receiver 'tipped' in a policeman's direction is still further from violating the privacy act."[19] Accordingly, the court affirmed the conviction.[20] On March 4, 1993, this court granted review.

## QUESTION PRESENTED

This case presents the question whether a police officer listening to a telephone conversation, with the consent of one party to the conversation, by the process of a "tipped" receiver held by the consenting party violates either RCW 9.73.030 or Const. art. 1, § 7; and if so, whether evidence obtained as a result of overhearing the conversation should be suppressed.

## DISCUSSION

We first address whether the state privacy act, RCW 9.73, has been violated. Whether the statute has been violated is, of course, a very different inquiry than whether the defendant's constitutional rights were violated. If the two were completely coextensive, there would have been no necessity for enactment of the privacy act.

The privacy act (Act) generally prohibits interception, transmission or recording of any "private communication" or

---

[16]67 Wn. App. at 711.

[17]58 Wn.2d 171, 361 P.2d 739 (1961).

[18]23 Wn. App. 869, 598 P.2d 783 (1979).

[19]*Corliss*, at 712.

[20]*Corliss*, at 713.

"private conversation" without the consent of all parties involved in the communication.[21] There are a number of statutory exceptions to the Act which are not applicable in this case. The Act also provides for procedures under which, in some circumstances, law enforcement may intercept or record conversations concerning controlled substances even without the consent of all parties to a conversation.[22] But the State concedes that such provisions do not apply in this case.

RCW 9.73.030(1)(a) provides in relevant part:

> Except as otherwise provided in this chapter, *it shall be unlawful for . . . the state* of Washington, its agencies, and political subdivisions *to intercept, or record, any:*
>
> (a) Private communication transmitted by telephone . . . between two or more individuals . . . *by any device electronic or otherwise designed to record and/or transmit said communication* regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(Italics ours.)

█ We conclude that the informant's act of tilting the telephone receiver so the officer could hear the conversation is not conduct prohibited by the Act. We agree with the trial court and the Court of Appeals that there was no violation of the statute because the conversation was not "intercepted" by a "device" designed to record or transmit. Here the officers did not "intercept" an otherwise private communication by means of any kind of device. They simply listened, in person, to what they could hear emanating from the telephone. Because there was no *device* used to record or transmit the conversation, we conclude that by the plain language of the statute, it is not applicable under the facts in this case. Our holding goes no further.

We do note, however, that the State and the Court of Appeals rely on our decision in *State v. Jennen*, 58 Wn.2d 171, 361 P.2d 739 (1961), as relevant to the statutory issue.

[21]*Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 184, 829 P.2d 1061 (1992).

[22]RCW 9.73.230.

Although *Jennen* is relevant to the state constitutional issue discussed later in this opinion, it is not relevant to the statutory analysis since that case was decided before enactment of the privacy act.

Having concluded that there was no violation of the privacy act, we next inquire whether this conduct was nonetheless violative of the Defendant's constitutional rights.

Petitioner Corliss apparently concedes that there was no violation of the Fourth Amendment under facts in this case. He is correct in this conclusion inasmuch as a warrantless monitoring of conversations does not violate the Fourth Amendment when one party to the conversation gives consent.[23]

Petitioner argues that even if there was no violation of the federal constitution or Washington's privacy act, his constitutional right to privacy under the Washington State Constitution was violated when the informant consented to allow the officers to hear his telephone conversations with Petitioner. In his brief to the Court of Appeals, Petitioner engaged in a *Gunwall*[24] analysis and argued that prior Washington law indicates that greater protection should be afforded under our state constitution, article 1, section 7, than is available under the fourth amendment to the United States Constitution. After Petitioner's brief was filed in the Court of Appeals, we decided *State v. Salinas*, 119 Wn.2d 192, 829 P.2d 1068 (1992). That case is directly in point.

■ In *Salinas*, Justice Dolliver, writing for an 8-Justice majority, explained as follows:

> The issue as to whether there is a right of privacy under our constitution where one party, as here, consents to the contents of the conversation being recorded was settled in three cases decided in the 1960's: *See State v. Jennen*, 58 Wn.2d 171, 361 P.2d 739 (1961); *see also State v. Wright*, 74 Wn.2d 355, 444 P.2d 676 (1968), *cert. denied*, 394 U.S. 961 (1969); *State v.*

[23]*United States v. Caceres*, 440 U.S. 741, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979); *United States v. White*, 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971); *see also State v. Pulido*, 68 Wn. App. 59, 63-64, 841 P.2d 1251 (1992), *review denied*, 121 Wn.2d 1018 (1993) and cases cited.

[24]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

*Goddard*, 74 Wn.2d 848, 447 P.2d 180 (1968). This court held there was no expectation of privacy and Const. art. 1, § 7 did not prevent the disclosure of the conversation. These cases have neither been overruled explicitly or implicitly nor have the cases decided by this court subsequent to *Wright, Goddard*, and *Jennen*, none of which concerned the privacy of electronic communications, impaired the validity of the earlier cases.[25]

We adhere to the view expressed in *Salinas* which was decided just last year, and conclude that Petitioner Allan B. Corliss' state constitutional privacy rights were not violated when the informant consented to allow the police officers to overhear his conversations with Petitioner. We therefore agree with the results reached by the trial court and the Court of Appeals in this case.

We affirm the Court of Appeals in upholding the judgment of the Snohomish County Superior Court which convicted Petitioner Allan B. Corliss of violating the Uniform Controlled Substances Act by attempted possession of a controlled substance (marijuana) with intent to deliver.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, GUY, and MADSEN, JJ., concur.

UTTER, J. (dissenting) — I dissent because the majority construes RCW 9.73.030 to sanction results which are arbitrary and incompatible with the statutory language.

The majority would have us hold the statute is drafted to include within its scope wiretaps and interceptions on extension telephones, but not the "tipping" of a telephone receiver to transmit the contents of the communication to a third party. Yet phone "tipping" is in every relevant sense the functional equivalent of a person listening on an extension telephone. It would therefore be more sensible to construe the statute to include, rather than exclude, the manner in which the interception was effectuated in this case.

---

[25]*Salinas,* 119 Wn.2d at 197.

The majority's problematic reading of the statute can be avoided by a careful examination of its pertinent language. RCW 9.73.030 provides:

> (1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions *to intercept*, or record any:
>
> (a) *Private communication transmitted by telephone*, telegraph, radio, or other device between two or more individuals between points within or without the state *by **any** device* electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication[.]

(Italics and boldface mine.)

Nothing in the statute suggests the instrument used to "intercept" in subsection (1) must be a different instrument from the "device electronic or otherwise designed to record and/or transmit said communication" in subsection (1)(a). On the contrary, it would seem that had the Legislature meant the two to be necessarily different, it would have inserted the word "other" between "any" and "device" (so the statute would read "by any other device"). In this case the police *did* intercept a phone conversation with a device designed to transmit said communications — the telephone receiver.

The police action falls even more neatly within subsection (1)(b) which states:

> Private conversation, *by any device* electronic or otherwise *designed to* record or *transmit such conversation **regardless how the device is powered or actuated*** without first obtaining the consent of all the persons engaged in the conversation.

(Italics and boldface mine.) RCW 9.73.030(1)(b).

The only relevant question, then, is whether this was a "private" conversation to begin with. If it is, the police must comply with RCW 9.73.030; otherwise, the police activity falls outside the purview of the statute, and no compliance is necessary.

In *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 829 P.2d 1061 (1992), we established the proper analysis for determining whether a conversation should be deemed private under the privacy act. We held that the term "'private conversation' is to be given its ordinary and usual meaning", and that "[t]o determine whether or not a telephone conversation is private, the court must consider the intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case." *Kadoranian*, 119 Wn.2d at 190 (citing with approval and quoting *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979)).

We held further that whether a conversation is private under this statute is a question of *fact*. Only where reasonable minds could reach but one result is it proper to decide the question as one of law. In *Kadoranian* we concluded the conversation was not private as a matter of law, because reasonable minds could not differ:

> When Ms. Kadoranian answered the home telephone, there is no indication she knew who the caller was. She gave general information, without requiring identification from the caller, and without asking the caller's reason for wanting to talk to her father. *There is no reason to believe that Ms. Kadoranian would have withheld this information from any caller. It does not appear that Ms. Kadoranian **intended** to keep the information (the fact that her father was not home) "secret" **or that she had any expectation** that her conversation was private.*

(Italics and boldface mine.) *Kadoranian*, 119 Wn.2d at 190.

The proper inquiry in this case is likewise one of fact, but can properly be decided as one of law. Ascribing its ordinary meaning to the term "private", the facts and circumstances of this case indicate this was a private conversation, because Corliss could not possibly have intended, nor could his reasonable expectation have been, otherwise. On the uncontested facts before us, I do not think reasonable minds could disagree. Indeed, the record clearly establishes the police officers purposefully designed this operation precisely

with the goal in mind of *creating* an expectation of privacy in the defendant had he not had one to begin with. *See* majority, at 658-59 (quoting Detective Watkins' testimony, in which he effectively concedes as much.) Accordingly, I would reverse the Court of Appeals.

JOHNSON, J., concurs with UTTER, J.