79 P.3d 12 (2003)
119 Wash.App. 74
STATE of Washington, Respondent,
v.
Oliver CHRISTENSEN, Appellant.
No. 50418-5-I.
Court of Appeals of Washington, Division 1.
November 10, 2003.
*13 Michael J. Tario, Tario & Associates PS, Bellingham, WA, for Appellant.
Philip J. Buri, Brett & Daugert PLLC, Bellingham, WA, for Respondent.
COX, A.C.J.
Oliver Christensen appeals his conviction for second degree robbery, contending that the trial court abused its discretion when it admitted evidence acquired in violation of RCW 9.73.030, the state privacy act. He also argues that the trial court abused its discretion when it denied his motion to dismiss based on alleged preaccusatorial delay that resulted in a loss of juvenile court jurisdiction and a due process violation. Finally, Christensen argues that the evidence was insufficient to support the jury's verdict.
*14 The trial court did not abuse its discretion when it admitted into evidence an intercepted telephone conversation that did not violate RCW 9.73.030. The trial court did not abuse its discretion when it denied Christensen's motion to dismiss. We also conclude that the evidence was sufficient to support the jury's verdict. We affirm.
In October 2000 at approximately 8:30 p.m., Wilma Loeb was walking in downtown Friday Harbor, returning to her hotel after a meal out alone. As she made her way up the sidewalk on Spring Street, two young men approached her and one grabbed her purse. Initially, Loeb resisted, but she let go of the purse after falling to the ground and damaging her glasses. The young men ran away.
Following his 18th birthday, which was 47 days after the robbery, the State charged Christensen with second degree robbery. He moved to dismiss, arguing that the prosecutor and law enforcement had intentionally delayed charging him until after his 18th birthday. The trial court denied the motion. The court also denied Christensen's motion in limine to exclude certain testimony of Carmen Dixon, his girlfriend's mother. Carmen monitored a telephone conversation between her daughter and Christensen discussing the robbery. Carmen used the speakerphone function at the base of a cordless phone after her daughter, Lacey, took the handset to her room to take Christensen's call. The challenged testimony centered on what Carmen heard.
The jury found Christensen guilty of second degree robbery, and the court sentenced him to the high end of the standard range.
Christensen appeals.

PRIVACY ACT
Christensen argues that the trial court abused its discretion by admitting evidence obtained in violation of RCW 9.73.030, which prohibits intercepting or recording private communications. We conclude listening to a telephone conversation at the base of a cordless telephone under the circumstances of this case does not violate the privacy act.
Washington's privacy act provides that it is unlawful for any individual to "intercept, or record any":

[p]rivate communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication.[[1]]
This statute is one of the most restrictive in the nation.[2] Evidence obtained in violation of the statute is generally inadmissible in any civil or criminal case.[3] This court reviews a trial court's decision on the admissibility of evidence for an abuse of discretion.[4]
There is no dispute that Carmen Dixon's monitoring of her daughter's telephone conversation with Christensen by use of the base of the cordless phone was an intercept. Thus, we must determine if the communication between Lacey and Christensen was a private communication recorded and/or transmitted by a qualifying device.

1. Private Communication
Our supreme court has adopted the dictionary definition of the word private: "belonging to one's self ... secret ... intended only for the persons involved (a conversation)... holding a confidential relationship to something ... a secret message: a private communication ... secretly: not open or in public."[5]
The subjective intention of the parties to the communication is among the factors that the court may consider in determining if a communication is private. A *15 court may also consider other factors bearing on the reasonableness of the participants' expectations, such as the duration and subject matter of the communication; the location of the communication and the presence of potential third parties; and the role of the nonconsenting party and his or her relationship to the consenting party.[[6]]
The mere possibility that interception of the communication is technologically feasible does not render public a communication that is otherwise private.[7] The question of whether a particular communication is private is generally a question of fact, but one that may be decided as a question of law if the facts are undisputed.[8]
The conversation between Lacey and Christensen was a private communication. A cordless telephone conversation is generally private under RCW 9.73.030.[9] The manifested intention of the parties here was that the conversation would be private. Lacey went upstairs to her own room with the handset to take the call after her mother answered the call from Christensen. While there is evidence in the record that Carmen regularly monitored her daughter's calls because of an alleged drug problem, there is no indication in the record that either Lacey or Christensen knew this. Certainly, the subject matter of the call, which included an alleged confession to a crime by a boyfriend to his girlfriend, was indicative of a conversation that the parties intended to remain private. The location of the receipt of the callLacey's roombuttresses this view.
The roles and relationships of the parties may also be a factor. In State v. Bonilla,[10] the accused called a police dispatcher and confessed to his wife's murder. In Bonilla, the court concluded that he had no reasonable expectation of privacy given the subject matter and the recipient of his call.[11] That is not the case here. The expectation of privacy was reasonable.
We reject the State's contention that the conversation was not private because "a parent has the right to monitor the phone calls coming into the family home." Such an argument is unsupported by a plain reading of the state privacy act. This argument appears to be nothing more than a request to engraft a judicial domestic telephone extension exception to the statute.[12] This policy choice is best left to the Legislature, not this court.
The State maintained at oral argument that In re M.G.[13] should govern this inquiry to the extent it stated the proposition that circumstances, such as concerns for safety, may justify the curtailment of a minor's constitutional rights in ways not permissible for adults.[14] We are disinclined to follow that reasoning. M.G. concerned geographical restrictions on a child the court had determined to be an "at-risk" youth.[15] It did not concern a determination of privacy rights under the state privacy act, and did not discuss the admissibility of evidence in that context.
We conclude that the conversation between Lacey and Christensen was a private communication *16 under the first prong of RCW 9.73.030.

2. Device designed to record and/or transmit
We must next determine whether the interception of this private communication was "by any device electronic or otherwise designed to record and/or transmit said communication." There is no contention here that Carmen employed any device "designed to record." Therefore, we must address whether she used a "device ... designed to... transmit [the] communication" at issue in this case. We conclude that the base of a cordless phone[16] is not such a device under the circumstances before us.
The State argues that the purpose of the privacy act is "to prevent the use of a separate transmitting device" to intercept calls.[17] Our supreme court recently rejected this precise argument.
In Townsend, e-mails sent by the accused were stored on the recipient's computer.[18] Our supreme court concluded that a computer was a device for recording the communication at issue, rejecting the State's argument that a device different from the device used to perform the communication was required to violate RCW 9.73.030.[19] Rejecting an argument to the contrary in the concurring opinion, the majority stated that a device separate from the device used for recording is not required. "That the communications were recorded on a device that can also be used to communicate is, as the Court of Appeals observed, `a distinction without a legal difference.'"[20]
We turn next to the phrase "device ... designed to ... transmit." Neither the phrase nor the word "transmit" is defined in the act. Well-established precedent indicates that we should look to the dictionary to determine the meaning of these terms.[21]
In context, the phrase "device ... designed to ... transmit" is most reasonably read to be a transmitter. The American Heritage Dictionary defines transmitter as "[t]he portion of a telephone that converts the incident sounds into electrical impulses that are conveyed to a remote receiver."[22] Webster's Third New International Dictionary contains similar definitions of this word.[23]
These definitions of transmitter do not apply to the base of the cordless phone as Carmen Dixon used its speaker function here. Two telephone cases where the privacy act was at issue are particularly instructive on this point.[24]
State v. Corliss[25] is the first case. It was a VUCSA prosecution. There, a police informant, who was standing next to a detective in a phone booth, "tilted" the receiver so that the detective could listen in on a conversation *17 with the accused.[26] Our supreme court found no violation of the privacy act. The court concluded:
... there was no violation of the statute because the conversation was not `intercepted' by a `device' designed to record or transmit. Here the officers did not `intercept' an otherwise private communication by means of any kind of device. They simply listened, in person, to what they could hear emanating from the telephone. Because there was no device used to record or transmit the conversation, we conclude that by the plain language of the statute, it is not applicable under the facts in this case.[[27]]
The "tilted receiver" monitoring approved in Corliss is the functional equivalent of the monitoring here. Our focus here is on the mother's monitoring of the conversation while using the speakerphone at the base of a cordless phone, where the daughter was using the handset of that phone in another room. As in Corliss, Carmen was able to listen, in person, to the sound waves emanating from the telephone base of the cordless phone while Lacey used the handset. For purposes of analysis of the second prong of the privacy act inquiry, it is irrelevant that Carmen was in a different room from Lacey while the detective and informant in Corliss were in the same phone booth.
Bonilla, which the Corliss court cited with approval, is also instructive. In Bonilla, the defendant telephoned the Kelso Police Department and told the dispatcher that he shot and killed his wife.[28] The dispatcher did not record the conversation, but did summon a police officer to listen to the conversation on an extension line in the office.[29] The court concluded that there was no evidence that a device designed to record and/or transmit the telephone conversation was used. "Police overheard the conversation on an ordinary extension telephone, without benefit of a recording or transmitting device."[30]
The base unit here was the functional equivalent of the extension telephone in Bonilla. Carmen used the base of the cordless phone as an extension to listen, in person, to the conversation at issue. Again, the fact that Lacey was is another room, using the handset, is not relevant to the second prong of the analysis.
Significantly, the Legislature has let stand the interpretation of the privacy act in light of these two cases. "In construing legislation, we presume the Legislature is [aware of] judicial interpretations of its [statutes]."[31] Thus, absent activity to amend the legislation, we can presume that the court's construction of the statute is consistent with legislative intent.[32]
One may debate whether the privacy act has kept pace with technology changes. But the fact remains that two appellate courts have construed the act to permit the type of monitoring at issue here, and the Legislature has seen fit to let those interpretations stand. Those cases are indistinguishable from the matter before us.
Because the base unit, as used in this case, is not the type of device contemplated by the statute, there was no violation of the privacy act. We conclude that the evidence of the content of Lacey and Christensen's private telephone conversation was not acquired in violation of RCW 9.73.030. There was no abuse of discretion in admitting it.
We affirm the judgment and sentence.
*18 Because the remaining issues presented here are not of precedential importance, the remainder of this opinion is unpublished.[33]
WE CONCUR: AGID and ELLINGTON, JJ., concur.
NOTES
[1] RCW 9.73.030(1)(a) (emphasis added).
[2] State v. Townsend, 147 Wash.2d 666, 672, 57 P.3d 255 (2002).
[3] RCW 9.73.050.
[4] State v. Finch, 137 Wash.2d 792, 810, 975 P.2d 967, cert. denied, 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999).
[5] Townsend, 147 Wash.2d at 673, 57 P.3d 255.
[6] Townsend, 147 Wash.2d at 673-74, 57 P.3d 255 (citing Clark, 129 Wash.2d at 225-27, 916 P.2d 384).
[7] Townsend, 147 Wash.2d at 674, 57 P.3d 255 (citing State v. Faford, 128 Wash.2d 476, 485, 910 P.2d 447 (1996)).
[8] State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996).
[9] Faford, 128 Wash.2d at 484, 910 P.2d 447.
[10] 23 Wash.App. 869, 598 P.2d 783 (1979).
[11] Bonilla, 23 Wash.App. at 873, 598 P.2d 783.
[12] While a "domestic telephone extension exception" is recognized under the federal wiretap statutes, no similar exception has been identified or articulated by Washington courts under our privacy act. See Oregon v. Capell, 156 Or.App. 582, 585, 966 P.2d 232 (1998), review denied, 328 Or. 418, 987 P.2d 512 (1999) ("18 USC § 2510(5)(a)(i) is commonly referred to by the federal case law as the `domestic telephone extension exception' to [18 USC § 2515]. Most of the federal courts that have considered the reach of the act in the context of a parent-child relationship have held that the exception applies to the recording of conversations that are pertinent to a child's well-being.").
[13] 103 Wash.App. 111, 11 P.3d 335 (2000).
[14] M.G., 103 Wash.App. at 118, 11 P.3d 335.
[15] M.G., 103 Wash.App. at 114, 11 P.3d 335.
[16] In cordless telephones, "[c]ommunication takes place when radio waves are transmitted between the mobile receiver and the base unit." Robert A. Crook, Sorry, Wrong Number: The Effect of Telephone Technology on Privacy Rights, 26 Wake Forest L.Rev. 669, 687-88 (1991).
[17] (Emphasis added.)
[18] Townsend, 147 Wash.2d at 670-71, 57 P.3d 255.
[19] Townsend, 147 Wash.2d at 674, 57 P.3d 255.
[20] Townsend, 147 Wash.2d at 674-75, 57 P.3d 255.
[21] Faford, 128 Wash.2d at 482, 910 P.2d 447.
[22] The American Heritage Dictionary, 1902 (3d. ed.1992).
[23] Webster's Third New International Dictionary, 2429 (1993) ("one that transmits...a part on a telephone into which one speaks and which contains a mechanism for converting sound waves into equivalent electric waves").
[24] The only reported decision involving a cordless telephone in Washington is Faford. Faford is distinguishable. It involved the use of a police scanner to capture radio waves from a cordless phone by intercepting the radio transmissions sent between the cordless phone and the base unit. Faford, 128 Wash.2d at 479, 910 P.2d 447. The court concluded that a scanner that could intercept the radio waves used in a cordless phone was a device under the statute. Faford, 128 Wash.2d at 483, 910 P.2d 447. The Faford court did not rule on whether the base unit of a cordless phone is a device for purposes of RCW 9.73.030, the question before us.
[25] 123 Wash.2d 656, 870 P.2d 317 (1994).
[26] Corliss, 123 Wash.2d at 658-659, 870 P.2d 317.
[27] Corliss, 123 Wash.2d at 662, 870 P.2d 317 (emphasis omitted).
[28] Bonilla, 23 Wash.App. at 870, 598 P.2d 783.
[29] Bonilla, 23 Wash.App. at 870, 598 P.2d 783.
[30] Bonilla, 23 Wash.App. at 873, 598 P.2d 783.
[31] Glass v. Stahl Specialty Co., 97 Wash.2d 880, 887, 652 P.2d 948 (1982).
[32] Soproni v. Polygon Apartment Partners, 137 Wash.2d 319, 327, 971 P.2d 500 (1999).
[33] See RCW 2.06.040.