IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38935-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL D. BLANCHARD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Michael Blanchard was convicted of two counts of first degree child rape and two counts of first degree child molestation for raping and sexually abusing his girlfriend's daughter, A.M. Blanchard appeals, arguing that admission of a recorded conversation violated the "Privacy Act" because A.M. was unaware that she was being recorded at the time that it was made. Blanchard also argues that his constitutional right to an impartial jury was violated when the judge, at voir dire, prohibited the prosecutor and defense counsel from asking potential jurors, "[i]f you were my client, would you want someone like you to be part of the jury pool?" Rep. of Proc. (RP) (Vol. 1 of 2) at 187. Finally, Blanchard contends that certain community custody provisions were erroneously imposed.

We decline to address Blanchard's Privacy Act argument because he did not object to the admission of the recording at trial. In addition, Blanchard does not demonstrate any prejudice from the court's ruling at voir dire. However, we agree that one of Blanchard's community custody provisions was erroneously imposed. We affirm Blanchard's conviction and remand to strike the community custody condition (20), that he abstain from entering bars, taverns, lounges or establishments where alcohol is the primary source of business.

## BACKGROUND

### A. ALLEGATIONS

Michael Blanchard and C. Taylor began dating in 2016. Taylor had two children from a previous relationship, one of them is A.M. Blanchard and Taylor had one child together.

On November 9, 2020, A.M. disclosed to her mother that Blanchard, who is not A.M.'s biological father but whom she referred to as "dad," had forced her to masturbate him. Following A.M.'s disclosure, Taylor took A.M. to Taylor's mother's home and then went to work.

While A.M. was at her grandmother's home, A.M.'s godfather, Tyler Deschane, arrived at the home to pick up his son, who was also at the grandmother's house. Upon arrival, Deschane found the grandmother and A.M. crying. The grandmother told Deschane what A.M. had disclosed, and Deschane decided to record a conversation with

A.M. but did not tell A.M. he was recording. During the conversation, A.M. disclosed that Blanchard had forced her to masturbate him and that it had happened multiple times. Deschane then turned the video over to law enforcement.

That evening, A.M. was treated at a hospital. A.M. repeated to the Sexual Assault Nurse Examiner (SANE) what she had told her mother, her grandmother, and Deschane. A.M. also disclosed that Blanchard had touched her "privates" with his hands and penis. She also told the SANE that Blanchard had put his penis in her mouth and that it had happened multiple times.

That same night, A.M. spoke to a child forensic interviewer. The video of the forensic interview was admitted at trial as exhibit 41. A.M. repeated that Blanchard had forced her to masturbate him and added that he had put his finger in her anus, had licked her anus, and had forced her to touch his penis and masturbate him on multiple occasions. A.M. also recounted that on one occasion, Blanchard pushed his penis on her "bum bum" and that "he was pushing on [A.M.'s] bum bum, inside of it" and that it hurt. Transcript of Ex. 41 at 43. A.M. also disclosed that Blanchard had pushed "his private where you go pee" and that "[his penis] was going inside. And it was pressing—he was pressing hard. And it hurted." Transcript of Ex. 41 at 44. A.M. described multiple incidents involving Blanchard forcing her to give him oral sex.

3

Blanchard was charged by second amended information with two counts of first degree rape of a child with aggravating circumstances and two counts of first degree child molestation with aggravating circumstances.

B. TRIAL

The case proceeded to trial. During voir dire, the court instructed the attorneys not to ask potential jurors: "[i]f you were my client, would you want someone like you to be part of the jury pool?" RP at 187. Neither attorney objected. Voir dire commenced and was conducted over the course of two days.

Multiple witnesses testified at trial including the mother, the grandmother, Deschane, the child forensic interviewer, the SANE, and A.M. At trial, the State moved to admit the conversation with A.M. that Deschane recorded. Defense counsel did not object, and the recording was admitted as exhibit 3. The recording was listed on Blanchard's trial exhibit list as well.

Ultimately, Blanchard was found guilty of both counts of first degree child rape and both counts of first degree child molestation. The jury also determined that aggravating circumstances existed as to three of the counts.

C. SENTENCING

The court imposed an exceptional sentence. Appendix "H" community custody conditions was attached. As a part of Blanchard's community custody conditions, he was required to obtain permission from his supervising community corrections officer (CCO)

4

before changing his work location. Blanchard was also prohibited from purchasing or possessing alcohol and from entering bars, taverns, lounges, or other places where alcohol is the primary source of business.

Blanchard timely appealed.

ANALYSIS

A. CHALLENGE TO THE RECORDED STATEMENT UNDER THE PRIVACY ACT

For the first time on appeal Blanchard argues that the recorded conversation between A.M. and Deschane violated the Privacy Act (RCW 9.73.030) and that it should not have been admissible at trial. Under RAP 2.5, this court may refuse to review any claim of error not raised at the trial court level. The only exceptions are for claimed errors of lack of jurisdiction, failure to establish facts upon which relief can be granted, and manifest error affecting a constitutional right. RAP 2.5(a).

Blanchard did not raise any objections to the admission of the recording below. At trial, the State moved to admit and publish the recording and defense counsel made no objection. Further, according to Blanchard's exhibit list, he planned on introducing the recording if the State did not. Finally, as the State points out, Blanchard actually used the recording at trial to point out inconsistencies in A.M.'s testimony.

Nor does Blanchard demonstrate an exception to the general rule of waiver. RAP 2.5(a)(3) allows for consideration of an error raised for the first time on appeal if the error

5

concerns a manifest error affecting a constitutional right. To meet RAP 2.5(a)(3), an appellant must demonstrate "(1) the error is manifest, and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). In other words, the appellant must "'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights.'" *Id.* (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)).

Blanchard cannot demonstrate that this is a constitutional error. "Under Washington Constitution article I, section 7, when one participant in a conversation has consented to the recording of the conversation, the state constitution is not violated." *State v. Kipp*, 179 Wn.2d 718, 725, 317 P.3d 1029 (2014) (citing *State v. Corliss*, 123 Wn.2d 656, 663-64, 870 P.2d 317 (1994)). "Similarly, recording a conversation with one party's consent does not violate the Fourth Amendment to the United States Constitution." *Id.* at 725-26 (citing *United States v. Caceres*, 440 U.S. 741, 750, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979)).

Here, Deschane, one of the participants in the conversation, consented to the recording, evidenced by him setting up the recording himself. RP at 432. Consequently, the recording of the conversation did not violate Washington's Constitution or the Constitution of the United States. Thus, no exception to RAP 2.5 applies.

We decline to address the issue because it is raised for the first time on appeal and no exception to RAP 2.5 applies.

B.  Voir Dire Questions

Blanchard argues that the court abused its discretion when it prohibited both attorneys from asking jurors at voir dire "[i]f you were my client, would you want someone like you to be part of the jury pool?"  RP at 187.  Blanchard argues that his right to a fair and impartial jury, as required by U.S. Const. art. I, § 22 and the Sixth Amendment was violated by this prohibition.  The State responds that Blanchard failed to preserve the issue for appeal by failing to object below, and any error is harmless because Blanchard cannot show prejudice

Blanchard did not object to the court's limitation on voir dire questions.  The record shows that the court instructed both parties to refrain from asking the jurors "[i]f you were my client, would you want someone like you to be part of the jury pool?"  RP at 187.  Neither party objected to the court's prohibition of that specific question.  Thus, the issue is raised for the first time on appeal.

As noted above, under RAP 2.5(a)(3) we will consider an error raised for the first time on appeal if the error concerns a manifest error affecting a constitutional right and the defendant can show prejudice.  *O'Hara*, 167 Wn.2d at 98 (citing *Kirkman*, 159 Wn.2d at 926).  Blanchard does not meet his burden of demonstrating that the alleged error is manifest or prejudicial.

Blanchard states that the court's decision to disallow the parties from asking the specific question referenced above denied him "a fair and impartial trial."  Appellant's

Br. at 20.  The record reflects that voir dire was conducted over the course of two days and that the court and the attorneys engaged in robust questioning of the jurors. Questions included: whether prospective jurors had a relative or friend who had experienced sexual assault; whether prospective jurors had experience with a child making up a story; and whether prospective jurors had ever had their child walk in on them while having sex with a partner.

A court's refusal to permit a specific question is not reversible error absent an abuse of discretion, which will only be found "if the questioning is not reasonably sufficient to test the jury for bias or partiality." *State v. Frederiksen*, 40 Wn. App. 749, 752, 700 P.2d 369 (1985).  Blanchard is unable to show that the trial court abused its discretion much less violated a constitutional right.  Even assuming a manifest error, Blanchard does not show how he was prejudiced by the court's prohibition on asking one specific question.  He has not made a showing that the voir dire questioning was insufficient to test the jury for bias or partiality.  We decline to consider this issue.

C.  COMMUNITY CUSTODY CONDITIONS

Blanchard argues that conditions 6, 18, and 20 of his community custody conditions were erroneously imposed and should be struck.  Condition 6 requires that Blanchard obtain prior permission of the supervising CCO to change his work location. Condition 18 prohibits Blanchard from purchasing alcohol, and condition 20 prohibits Blanchard from entering bars, taverns, lounges or other places, including casinos, where

alcohol is the primary source of business. The State argues that conditions 6 and 18 should stand but concedes that condition 20 should be struck. We agree with the State and uphold conditions 6 and 18 but remand to strike condition 20.

This court reviews de novo whether the trial court had statutory authority to impose a sentencing condition. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). RCW 9.94A.703(3) authorizes a trial court to impose discretionary community custody conditions. Crime-related prohibitions prohibit conduct that either directly or reasonably relates to the circumstances of the defendant's offense. *State v. Nguyen*, 191 Wn.2d 671, 683-84, 425 P.3d 847 (2018). "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" *Nguyen*, 191 Wn.2d at 684 (quoting *State v. Irwin*, 191 Wn. App. 644, 364 P.3d 830 (2015)).

*Condition 6*

Blanchard argues that condition 6 bears no relationship to his charged offenses. He contends that condition 6 falls within the ambit of a waivable condition of community custody and that RCW 9.94A.703(2)(b), which the State cites as the applicable statute authorizing this condition, does not permit the requirement of prior approval for a work change location. We hold that RCW 9.94A.703(2)(b) authorizes condition 6.

Condition 6 states that Blanchard shall "obtain prior permission of the supervising CCO before changing work location." Clerk's Papers (CP) at 260. RCW 9.94A.703 states:

> (2) **Waivable conditions.** Unless waived by the court, as part of any term of community custody, the court shall order an offender to:
>
> . . .
>
> (b) Work at department-approved education, employment, or community restitution, or any combination thereof.

The statute gives the department of corrections, and by extension the CCO, the authority to approve employment. It follows that Blanchard's CCO would have the authority to approve a changing work location. Thus, the court had authority to impose condition 6.

*Condition 18*

Blanchard argues that condition 18 should be struck because there are no facts in the record indicating that alcohol or controlled substances were involved in his charged offenses and that the trial court thus exceeded its authority in imposing condition 18. The State responds that the trial court can order that a defendant refrain from possessing alcohol whether or not substance use was related to the charged crime. Thus, the State contends that the condition should stand.

Condition 18 states that Blanchard "[cannot] purchase or possess alcohol." CP at 261. RCW 9.94A.703 states that

> (3) **Discretionary conditions.** As part of any term of community custody, the court may order an offender to:
>
> . . .
>
> (e) Refrain from possessing or consuming alcohol.

10

The court has authority to prohibit a defendant from consuming alcohol "regardless of whether alcohol was related to the crime." *State v. Kinzle*, 181 Wn. App. 774, 786, 326 P.3d 870 (2014). Thus, the court had the authority to impose condition 18.

*Condition 20*

Blanchard argues that condition 20 should be struck because it is not crime related. The State concedes that condition 20 is not crime related and should thus be struck. We agree.

Condition 20 states that Blanchard cannot "enter any bars/taverns/lounges or other places where alcohol is the primary source of business. This includes casinos and or any location which requires you to be over 21 years of age." CP at 261. Courts are authorized to impose crime-related prohibitions on defendants. RCW 9.94A.703(f). Crime-related prohibitions prohibit conduct that directly relates to the circumstances of the crime that the defendant is convicted of. *Nguyen*, 191 Wn.2d at 683 (citing RCW 9.94A.030(10)).

Here, the court exceeded its authority when it imposed condition 20 because nothing in the record indicates that alcohol contributed to Blanchard's offenses. Therefore, prohibiting him from entering places "where [alcohol is] the primary source of business" is not a crime related prohibition and should not have been imposed. The State concedes. Thus, we remand to strike condition 20.

We affirm Blanchard's convictions and sentence, but remand to strike community custody provision 20 from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, J.

_____
Siddoway, J.